THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANTONINO SCIMENI, Plaintiff in Error.

*Opinion filed April 24, 1925.*

1. CRIMINAL LAW—*statement of doctrine of self-defense.* To justify homicide on the ground of self-defense it must have appeared to the defendant, acting as a reasonable person under the circumstances in which he was placed when he struck the fatal blow, that he was in danger of losing his life or of receiving great bodily harm and that the force used in defense was necessary or apparently necessary.

2. SAME—*when instruction as to self-defense is misleading.* An instruction as to self-defense is misleading where it is to the effect that the killing was not justifiable if the jury finds that the infliction of the mortal wound was not necessary, as the question for the jury is not whether it appeared to them that the act was necessary, but whether it so appeared to the defendant acting as a reasonable person.

3. SAME—*misleading instruction may be cured by other instructions.* While an instruction which mis-states the law cannot be cured by another instruction given on the same trial which correctly states the law, an instruction which is merely incomplete can be supplemented by other instructions, and where instructions on a given subject, taken as a series, fully and correctly state the law, then it is not material that one of them, standing alone, might have misled the jury.

4. SAME—*when an instruction quoting section 148 of Criminal Code, as to self-defense, is proper.* An instruction quoting the language of section 148 of the Criminal Code on the doctrine of self-defense is proper where the facts warrant the giving of such instruction, and an instruction that the circumstances must have been sufficient to "convince any reasonable person like situated that he was in danger of receiving great bodily injury," while not accurate in using the term "any reasonable person" instead of "the defendant, acting as a reasonable person," is not misleading when given with other correct instructions.

5. SAME—*there is no intent to kill in manslaughter—instruction.* To reduce a killing to manslaughter it must be the result of a sudden, violent impulse of passion supposed to be irresistible, but as the existence of an intent to kill negatives the idea of an irresist-

ible impulse, an instruction that "the intent to kill may not be an intent to commit murder, but to take the life of another in self-defense, or upon that sudden heat of passion which reduces the crime of killing to manslaughter," is properly refused.

6. SAME—*when a verdict will not be set aside.* The Supreme Court will not set aside a verdict of guilty, as being contrary to the weight of the evidence, unless from a candid and impartial consideration of all the evidence it is clear that there is a reasonable doubt of the defendant's guilt; and where the case depends upon the credibility of witnesses, the court will not substitute its judgment for that of the jury, unless it is clear that the jury have made a mistake or have acted from passion or prejudice.

DeYOUNG, J., took no part.

· WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FREDERIC R. DeYOUNG, Judge, presiding.

WILLIAM NAVIGATO, THOMAS E. SWANSON, and ELWYN E. LONG, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Antonino Scimeni was convicted in the criminal court of Cook county of murder and his punishment fixed at fourteen years in the penitentiary. He prosecutes this writ of error to reverse the judgment upon the grounds that his guilt is not shown by the evidence beyond a reasonable doubt and that the court erred in the giving and refusing of instructions.

Defendant and four other Italians called at the home of John Mussilliani about 7:30 o'clock in the evening of October 15, 1923. The host seated his guests at a table in the dining room and served them sardines, bread, olives and wine. For the next two hours these men ate, drank and

talked.   Much of their conversation pertained to grapes and wine and the degrees of success attained by them in the home manufacture of the latter.   During the two hours these men visited they consumed four or five bottles of wine.   About nine o'clock Baldassare Tranchita, one of the men, asked defendant to have another drink.   The latter replied that he did not want any more, and this seemed to anger Tranchita.   He applied to Scimeni a foul epithet and charged that he was not drinking more with them because he thought he was better than they.   Scimeni denied that he considered himself superior to his companions, and asserted that he knew when he had enough wine and that Tranchita could drink what he pleased.   At this point the stories of the witnesses differ.   Only four of the six persons who had been eating and drinking around the table were present when the assault was made.   Mussilliani says that Tranchita rose to his feet and slapped Scimeni in the face and that the latter struck Tranchita in the stomach and then left the house.   Pellegrino testified that when Tranchita struck Scimeni in the face those present protested and told Tranchita to behave himself because they were all friends there; that Tranchita said that Scimeni was no good and that his family in Italy was a family of prostitutes; that Scimeni protested against the abuse of his family, and that Tranchita, with a move of his hand toward his hip pocket, said, "If you move I will kill you;" that Scimeni then stabbed Tranchita in the stomach with a knife. The story of the events leading up to the stabbing given by Pellegrino on the trial did not correspond with the story told by him at the coroner's inquest.   At that time he did not say anything about Tranchita's reference to Scimeni's family as prostitutes, nor did he say anything about Tranchita's threat to shoot Scimeni.   At the trial Scimeni testified in his own behalf, and his story of the occurrences of the evening corresponded substantially with the story told at the trial by Pellegrino.   Tranchita was taken to the hos-

pital, where he died the next morning. Scimeni was arrested two days later at the home of a cousin, where he had gone on the night of the trouble and remained until he was found by the officers.

The ninth instruction given at the request of the People told the jury that if they found "that the infliction of such wound by the defendant was not necessary or apparently necessary to save his own life or to prevent his receiving great bodily harm, then the killing under such circumstances would not be justifiable under the plea of self-defense." The law is, that if it appeared to defendant, acting as a reasonable person under the circumstances under which he was placed, that he was in danger of losing his life or of receiving great bodily harm, then he was warranted in using such force as seemed to him necessary, or apparently necessary, to defend himself against the attack of the deceased. The instruction as given was liable to mislead the jurors to believe that they should decide whether in their judgment the act of defendant was necessary to save his own life or to save himself from receiving great bodily harm. The question for the jury to determine was not whether it appeared to the jury from the evidence in the case that the act of defendant was necessary, but the question for them to decide was whether it appeared to defendant, acting as a reasonable person under the circumstances under which he was placed, that he was in danger of death or of receiving great bodily harm. (*People* v. *Dugas*, 310 Ill. 291; *People* v. *Durand*, 307 id. 611.) The court gave to the jury two instructions on behalf of defendant which stated the law accurately. One of these stated, "It is sufficient if the deceased attempted to assault the defendant in such a way and under such circumstances as to create in the mind of the defendant a reasonable belief that he was about to be killed or to receive great bodily harm," and the other stated, "All that is necessary is that the defendant had reasonable grounds to believe that the danger was real.

and was about to fall on him, and if he acted in good faith and under an honest belief that he was in apparent danger of losing his life or of receiving great bodily' harm, then he cannot be found guilty, even though he may have made a mistake as to the impending danger." While an instruction which mis-states the law cannot be cured by another instruction given on the same trial which correctly states the law, an instruction which is merely incomplete can be supplemented by other instructions which are in harmony. Where instructions on a given subject, taken as a series, fully and correctly state the law, then it is not material that one of the instructions, standing alone, might have misled the jury. The giving of defendant's instructions 4 and 5 supplemented and cured the omission in People's instruction 9.

Instruction 10 given on behalf of the People stated that threats of Tranchita cannot "avail said defendant unless at the time he made the assault alleged in the indictment he was actually assailed or had sufficient evidence to convince any reasonable person like situated that he was in danger of receiving great bodily injury or of losing his life at the hands of the said Baldassare Tranchita." The attorneys for defendant say: "The vice of this instruction is that the jury were told, in effect, that if the defendant actually and honestly believed under the circumstances confronting him at the moment he struck the fatal blow that he was about to lose his life or receive great bodily injury, it nevertheless, was not justifiable homicide if any other reasonable person would not have had such apprehensions." The instruction would have more accurately stated the law if it had said that the circumstances must "convince defendant, acting as a reasonable person under similar circumstances," but we are of the opinion that the instruction, taken in connection with other instructions of the series, was not likely to mislead. Section 148 of the Criminal Code says: "It must appear that the circumstances were sufficient to excite

the fears of a reasonable person and that the party killing really acted under the influence of those fears and not in a spirit of revenge." Where the facts warrant the giving of such an instruction, one in the language of section 148 has been approved. (*Parsons* v. *People,* 218 Ill. 386.) This instruction states the law in substantial conformity with the law announced by this court in *People* v. *McGinnis,* 234 Ill. 68, and is not subject to the objections urged against it.

The court refused to give an instruction on behalf of defendant which said, among other things: "If you believe from the evidence that at the time the fatal blow was struck that killed the deceased, the deceased drew his right hand from his hip pocket and that at the time there was induced in the mind of the defendant a reasonable and well-grounded fear and belief" of danger, he should be found not guilty. This instruction was properly refused, because there was no evidence in the record that "deceased drew his right hand from his hip pocket." The only testimony on this subject was that of defendant and Pellegrino, who say that Tranchita moved his hand toward his hip pocket as he made the threat to kill.

The court also refused an instruction which included this sentence: "The intent to kill may not be an intent to commit murder, but to take the life of another in self-defense, or upon that sudden heat of passion which reduces the crime of killing to manslaughter." This sentence is ambiguous and does not state any correct proposition of law applicable to the facts in this case. There cannot be an intent to kill upon a sudden heat of passion which reduces the killing to manslaughter. In order to reduce a killing to manslaughter it must be the result of that sudden, violent impulse of passion supposed to be irresistible. The fact that the assailant entertained an intent to kill negatives the idea that the killing was the result of an irresistible impulse of passion.

We have examined all of the errors assigned and argued with respect to the giving and refusing of instructions and are convinced that the jury were fully instructed with respect to the law of this case, and that, considering the instructions as a series, there are no such omissions and inaccuracies as were likely to mislead the jury. It is not necessary in order to affirm a conviction to find that the instructions are free from error. To require absolute and technical accuracy in instructions would, as a general rule, defeat the ends of justice and bring the administration of the criminal law into disrepute and contempt. It is sufficient when the instructions, considered as a whole, substantially and fairly present the law of the case to the jury. *People* v. *Lloyd,* 304 Ill. 23; *People* v. *Haensel,* 293 id. 33.

When defendant was arrested he had on his person a pocket knife with a three-inch blade which opened by the release of a spring. He testified that this knife belonged to Mussilliani and was unable to account for its being in his possession. He says that the knife was being used to cut bread at the table and that he grabbed it and used it while he was stricken with great fear. Mussilliani and his wife deny that the knife found on defendant belonged to them and that it was used that night to cut the bread. Defendant contends that it was immaterial to whom this knife belonged and that it was error on the part of the State to impeach his testimony on this immaterial matter. There is no merit in this objection, because the evidence with respect to the ownership of the knife was both relevant and material.

There were discrepancies in the testimony of the witnesses to this assault, but the evidence introduced on behalf of the People, if believed, is sufficient to establish the guilt of the defendant of the crime of murder. It was peculiarly the province of the jury to determine the credibility of the witnesses and the weight which should be given to their testimony. This court will not set aside a verdict of guilty as being contrary to the weight of the evidence unless from

a candid and impartial consideration of all the evidence it is clear that there is a reasonable doubt of the defendant's guilt. Where the case depends upon the credibility of witnesses the court will not substitute its judgment for that of the jury unless it is clear that the jury have made a mistake or have acted from passion or prejudice. (*People* v. *True,* 314 Ill. 89; *People* v. *Hildebrand,* 307 id. 544.) The jury had an opportunity, which is denied us, to see and observe the witnesses, to judge their character from their appearance and conduct on the witness stand, and to form an opinion upon the accuracy of their observation, the clearness of their recollection and the trustworthiness of their narrative. There is no indication in this record that the verdict of the jury was not based upon a discriminating consideration of the evidence received.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DEYOUNG took no part in this decision.