(No. 18083.—Affirmed in part and reversed in part.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELMER BELL *et al.* Plaintiffs in Error.

*Opinion filed December 21, 1927—Rehearing denied Feb. 9, 1928.*

1. CRIMINAL LAW—*court may admit rebuttal evidence although it might have been offered in chief.* While the rules of practice require each party to introduce all of his evidence in chief when proving his case the parties may afterwards introduce rebutting evidence in support of their evidence in chief, and where such rebuttal evidence might properly have been introduced in chief it is discretionary with the court whether it shall be admitted as rebuttal, even though there are two defendants and the evidence is in rebuttal of the evidence of only one of them.

2. SAME—*what constitutes rebuttal evidence.* Rebuttal evidence is that which is produced by a plaintiff to explain, repel, contradict or disprove evidence given by the defendant, and where it is real rebuttal evidence the fact that it might have been offered in chief does not preclude its admission in rebuttal.

3. SAME—*when verdicts on separate counts are not inconsistent.* Where an indictment charges, in two separate counts, robbery and robbery with a dangerous weapon, the fact that the jury returns two verdicts, one finding the defendants guilty as charged in the second count and the other finding the defendants guilty as charged in the first count, does not render the jury's finding inconsistent and tantamount to an acquittal, but the two verdicts simply amount to a finding that the defendants are guilty in manner and form as charged in the indictment.

4. SAME—*instruction as to credibility of witnesses should not be limited to defendants.* An instruction that if the jury find that the defendants have "willfully and corruptly testified falsely to any fact material to the issue in the case, they have a right to entirely disregard their testimony excepting in so far as their testimony is corroborated by other credible evidence," should not be given, and it constitutes prejudicial error in a case where the evidence of guilt is not clear and where no other instruction is given making the rule applicable to the testimony of other witnesses besides the defendants.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

GEORGE W. SPRENGER, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, HENRY E. PRATT, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Per CURIAM: Plaintiffs in error, Elmer Bell and Ralph Hackett, were indicted, tried and convicted in the circuit court of Peoria county upon an indictment containing two counts, the first of which charged the crime of robbery, and the second, robbery with a dangerous weapon. Joseph Daugherty was indicted with plaintiffs in error, but he is not otherwise connected with the record.

The evidence shows that on June 8, 1924, Roy Newman, John Streicker and Charles Davis, employees of the Peoria Railroad Company, which operates a street car system in Peoria, were operating a special car to collect the receipts of the system for the previous day from various street car barns, and in the course of their employment they proceeded to the Main street car barn, where they made a collection and then proceeded a short distance to the corner of Main and Globe streets for the purpose of turning the car around. When their car rounded the corner to Globe street a dark-blue Cadillac touring car, closely curtained, was parked near a laundry on that corner. Newman, the motorman, stopped the car on Globe street, and as he did so, Davis, acting as conductor, stepped off the back end of the car to turn the trolley. Just then the Cadillac car turned around and came up Globe street back of the street car. Two men got out of the Cadillac car, and one of them, with a gun in his hand, ordered Davis to put up his hands and go back into the street car, and another man held a gun on Newman and Streicker. The robbers wore raincoats, and the part of their faces below the eyes was covered with masks, and caps drawn down over their eyes covered their hair. The money which had been collected was in tin tills enclosed in wooden boxes.

The robbers ordered the employees to hand the boxes containing the money out to them. All the boxes were loaded into the Cadillac car except three, which were left on the sidewalk. The boxes taken contained about $800 in money. The Cadillac car was immediately driven away, going up Globe street to Knoxville and out Knoxville avenue. Davis testified that all three men engaged in the robbery, but none of the employees identified either plaintiff in error as being one of the robbers. Newman reported the occurrence to the police at once, and they arrived on the scene a few minutes later in a riot car. It had rained the night before and it was misting some at the time of the robbery, so that the pavements were quite wet. The policemen testified that they were able to trace the Cadillac car by means of tracks upon the wet pavement, up Globe street to Knoxville avenue, up Knoxville avenue to McClure avenue, east on McClure avenue and into Glen Oak Park, where the tracks became confused with various other tracks. After talking with the man at the greenhouse in Glen Oak Park the police proceeded through the park to the bottom of the hill, where at the entrance to a cemetery they found a Cadillac car, which was identified as the one driven away from the scene of the robbery about fifteen minutes before. Some witnesses testified that they saw in the Cadillac car pieces of wood similar to that of the boxes later found and identified as the boxes taken from the street car. While the officers were standing about the Cadillac car they heard the roar of a motor on top of the hill a short distance away. On Lake street, in the village of Averyville, near the park, the officers found an Essex car mired in the mud. Two men were standing near it. After the officers approached and got out of their car the two men started running. Officer Fitch fired at them and they jumped over a near by embankment. Fitch testified that he recognized Hackett but did not recognize Bell, whom he knew. The officers followed Hackett and arrested him

several blocks from the Essex automobile. The Essex automobile belonged to Bell, who was arrested in his room on North Adams street about eight o'clock of the same morning. Myrtle Bradshaw testified that shortly before the arrest of Hackett she saw two boys dodging in and out of sheds in her back yard; that Hackett, who was arrested in her presence, asked her to permit him to hide in her house and the other young man ran away. This witness did not identify Bell as the man who ran away. Anna Rose, a witness living in the neighborhood where Hackett's arrest was made, testified that she saw two boys running through Myrtle Bradshaw's yard on that morning and she identified plaintiffs in error as those two young men. The officers testified that on their return to the Essex car on Lake street they found splinters on the bottom of the car and in the back seat there were splinters and a large hammer; that on the front seat was a brown coat, in the pocket of which was a picture of Bell; that on the ground, two or three feet back of the Essex car, they found wooden boxes and tin money tills, which were identified on the trial as those taken from the street car at the time of the robbery. The boxes had been broken open and contained no money when found.

Both defendants took the stand and denied any connection with the robbery. Hackett testified that on the day of the robbery he was employed as a taxicab driver; that he had worked the entire preceding night, and that between 6:30 and 7:00 o'clock on that morning he received a call from William Pillman to go to McClure avenue, near the entrance of Glen Oak Park; that his Hudson sedan had broken down and he was unable to answer the call with his car, so he went to the room of Bell and asked him for his key and for permission to use his car, an Essex; that on his way to answer this call he picked up Joe Zipper, who had broken jail and was wanted by the police, and took him with him, and that they were mired in the mud on Lake

328—29

street and were attempting to get the car out of the mud when the police arrived; that as soon as the police arrived they started shooting at the witness and Zipper; that Zipper ran away and he (Hackett) threw up his hands, but as the police kept on shooting he likewise ran. Bell testified that he had been out until about 3:30 o'clock in the morning with a girl from East Peoria; that he was in bed when Hackett came that morning and asked him for the key to his car, which he gave him; that he did not know the residence of his companion of the night before; that it was physically impossible for him to run because of a partial paralysis of his legs, due to syphilis. In this latter statement he was corroborated by a Dr. Trewyn, who testified that he had treated Bell for two years for syphilis in the tertiary stage; that his left leg and arm were then paralyzed and that it was impossible for him to run. William Pillman, the man who Hackett testified had called him to come to McClure avenue, testified that he called Hackett from some house on McClure avenue but that he didn't know where the house was located. Evidence was offered by the People tending to show that Pillman's reputation for truth and veracity was bad. His statement on the witness stand was in some respects contradictory and in others improbable.

In rebuttal the State introduced the evidence of Fred Mathews, who testified, over the objection of plaintiffs in error, that on the morning in question he saw an Essex car in Glen Oak Park, across from a certain log cabin and near the greenhouse; that later a Cadillac car was driven alongside the Essex and two men transferred boxes, or some heavy substance, from the Cadillac car to the Essex, the operation requiring some seven or eight minutes, and the Cadillac and Essex then separated, and a few minutes later the police came. Counsel for plaintiffs in error objected to this testimony on the ground that it was not proper rebuttal and after Mathews had testified moved to strike out

his evidence on that ground. The trial judge refused to do so and let it stand.

The first error assigned by plaintiffs in error is as to the introduction of the evidence of Mathews. Plaintiffs in error contend that the prosecution ought not, with knowledge of important testimony at its command, to close its case without introducing it, and then, after the defendant has introduced his testimony, be permitted to open up its case anew and introduce evidence in chief which it could have produced at the proper time but withheld without some reason being shown for the failure to produce such evidence, and cite *People* v. *Castree,* 311 Ill. 392. In the *Castree case,* after the evidence had been heard and both sides had rested, the court permitted the People to introduce and examine a witness who gave damaging testimony in chief, against plaintiff in error's objection to his examination at that time, without showing any reason for the failure to produce such witness while the People were introducing evidence in chief. Of course, the rule laid down in the *Castree case* was the proper rule in that case but it has no application here. While the rules of practice require each party to introduce all of his evidence in chief when proving his case, yet the parties have a right afterwards to introduce rebutting evidence in support of their evidence in chief, (*Chillicothe Bridge Co.* v. *Jameson,* 48 Ill. 281,) and where testimony which might properly have been introduced as proof in chief is offered in rebuttal, it is discretionary with the trial court whether such testimony shall be admitted or not. (*First Nat. Bank* v. *Lake Erie and Western Railroad Co.* 174 Ill. 36; *City of Sandwich* v. *Dolan,* 141 id. 430.) Rebutting evidence is that which is produced by a plaintiff to explain, repel, contradict or disprove the evidence given by the defendant, (*City of Sandwich* v. *Dolan, supra,*) and where the evidence offered in rebuttal is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal.

(*French* v. *Hall*, 119 U. S. 152; *St. Paul Plow Works* v. *Starling*, 140 id. 184; *Throckmorton* v. *Holt*, 180 id. 552; *Louis* v. *Tapman*, 90 Md. 294.) The evidence of the witness Mathews tended directly to contradict and rebut the evidence of plaintiff in error Hackett, and for that reason it was competent as against him without any reason for its non-production as evidence in chief. It did not, however, in anywise tend to rebut or contradict Bell's evidence. As Hackett and Bell were tried together it was not error to admit in evidence testimony which was competent as to one of them.

It is next contended by plaintiffs in error that the verdict is contrary to the evidence in the case. There was sufficient evidence submitted to the jury by the prosecution to authorize a verdict of guilty as it stood alone. Without going into the details of the testimony further than we have gone, we are of the opinion that the evidence in the case shows the guilt of Hackett so conclusively that no verdict other than that of guilty could reasonably have been rendered by the jury.

It is contended by plaintiffs in error that the verdicts in this case are a nullity because by their tenor they are inconsistent and are tantamount to an acquittal. The jury rendered two verdicts, as follows:

"We, the jury, find the defendants Ralph Hackett and Elmer Bell guilty of robbery in manner and form as charged in the second count of the dictment, and find their age to be, Elmer Bell twenty-six years, and twenty-three years Ralph Hackett, respectfully."

"We, the jury, find the defendants Ralph Hackett and Elmer Bell guilty of robbery in manner and form as charged in the first count of the indictment, and find their age, Elmer Bell twenty-six years and Ralph Hackett twenty-three years old."

The contention of plaintiffs in error is, that if defendants are guilty under the first count they cannot be guilty

under the second count, and if they are guilty under the second count they cannot be guilty under the first count. This contention cannot be maintained. Had the jury returned a verdict finding plaintiffs in error guilty only under the first count this would have amounted to a verdict of acquittal under the second count, but they also brought in a verdict of guilty under the second count. The second count included every material element of the first count, so that there is no inconsistency in the two verdicts. They simply amount to a finding that plaintiffs in error are guilty in manner and form as charged in the indictment.

The court at the request of the People gave to the jury the following instruction:

"You are not at liberty to disbelieve, as jurors, if, from all the evidence, you believe as men. Your oath imposes on you no obligation to doubt where no doubt exists if no oath had been administered."

It is contended by plaintiffs in error that the last sentence does not confine the jury to a consideration of the evidence, in that they are told that their oath imposes upon them no obligation to doubt if no doubt existed had no oath been administered. While technically the phraseology of this instruction is subject to some criticism, the giving of it has been upheld in *People* v. *Spies,* 122 Ill. 1, *Watt* v. *People,* 126 id. 9, *People* v. *Zajicek,* 233 id. 198, and *People* v. *LeMorte,* 289 id. 11.

Plaintiffs in error complain of the giving of an instruction in behalf of the People on the subject of circumstantial evidence, on the alleged ground that it assumes there are circumstances proved beyond a reasonable doubt. This criticism is hypercritical.

Plaintiffs in error complain of the giving of People's instruction No. 3, and cite *Eller* v. *People,* 153 Ill. 344, and *People* v. *Toohey,* 319 id. 113. The defects in the instructions in those cases do not here appear.

At the request of the People the court gave the jury an instruction the last sentence of which is as follows: "And the court further instructs the jury that if, after considering all the evidence in the case, they find that the accused had willfully and corruptly testified falsely to any fact material to the issue in the case, they have a right to entirely disregard their testimony excepting in so far as their testimony is corroborated by other credible evidence or facts and circumstances presented in the evidence in this case." This instruction is made applicable only to the testimony of the accused, and by no other instruction is this rule made applicable to the testimony of the other witnesses. We have frequently held that an instruction which singles out the testimony of the accused so as to cast suspicion thereon is prejudicial error. (*People* v. *Washington,* 327 Ill. 152). Practically this same instruction was condemned in *People* v. *Schuele,* 326 Ill. 366. While the evidence against Hackett was so clear and convincing that the jury could not reasonably have rendered any verdict other than the one they did, the evidence against Bell is not so clear and convincing. The only direct evidence against him is the testimony of Mrs. Rose. She stated that she identified Bell as one of the men she saw running through the yard. Her testimony is somewhat weakened by the fact that she testified that each of the men she saw running had a gun in each hand, while no other witness testified to seeing a gun in the hand of either about that time. She also testified that the man whom she saw with Hackett was shorter than Hackett, while the other evidence shows that Bell is the taller of the two. Officer Fitch, who had been personally acquainted with both Hackett and Bell and was within 200 feet of the Essex car when the two men started running, testified that he recognized Hackett but did not recognize Bell. The testimony of the physician as to Bell's inability to run also tends to weaken Mrs. Rose's identification. In this state of the evidence

the giving of this instruction was prejudicial to Bell and constituted prejudicial error as to him. *People* v. *Schuele, supra.*

The judgment of the circuit court is affirmed as to Hackett and reversed and the cause remanded as to Bell.

*Affirmed as to Hackett and reversed and remanded as to Bell.*