(No. 18880.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH GIARDIANO, Plaintiff in Error.

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

CLYDE D. MILLER, and R. B. HENDRICKS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, H. C. LINDAUER, State's Attorney, FRANK R. EAGLETON, and ROY D. JOHNSON, (CURT C. LINDAUER, and ARTHUR W. PETH, of counsel,) for the People.

Mr. CHIEF JUSTICE DeYoung delivered the opinion of the court:

Joseph Giardiano, Albert Rogles, Irwin Lockman, Joseph Troup, Robert Kennedy, Frank Sudbek, alias Frank Murphy, Tony Regina and Nettie Stephenson, alias Nettie Stevens, were indicted in the circuit court of St. Clair county for robbery while armed with dangerous weapons. Giardiano and Rogles were tried together and a jury found them guilty of robbery—Giardiano while armed with a dangerous weapon and Rogles while not armed. Motions for new trial and in arrest of judgment were denied and both were sentenced to the penitentiary. Giardiano prosecutes this writ of error for a review of the record.

About one o'clock in the afternoon of July 19, 1926, Aubrey N. Engle, Joseph VanDusen, Albert B. Schiek, Frank Crowell and Curt Michaelis, all employees of the East St. Louis and Suburban Railway Company, boarded a street car with $8100 in their custody, for the purpose of depositing the money in two banks to the company's credit. The money was contained in five leather bags laid on the floor of the car. The car was operated by Elmer Rose, motorman, and Frank Puckett, conductor. When the car reached the tracks of the Southern railway it was stopped, the conductor opened the center doors on one side of the car, walked ahead, and, as he reached the crossing, turned to signal the motorman to proceed. At the same moment a man approached the conductor, pointed two guns at him and commanded him to retire to the vestibule of the car occupied by the motorman. About the same time a Lincoln automobile painted green stopped alongside the center of the street car. VanDusen, the assistant cashier of the company, was standing in the center of the car, within three feet of the bags containing the money. A man entered the car, confronted VanDusen with a gun and commanded him to lie down. Instead of obeying, VanDusen walked to the

front of the car. He identified his assailant as Giardiano, the plaintiff in error. Engle, the cashier of the company, and Michaelis, were seated in the rear of the car, facing forward. The former heard the command addressed to VanDusen and saw persons outside the car waving revolvers. Engle hid behind the rear seat. He saw the robber in the car but was unable to identify him. Schiek heard the command to lie down, obeyed it, and saw the robber in the car pointing his weapon at the men sitting across the aisle. He identified Giardiano as the robber with the gun. Crowell sat to the rear of the middle of the car. Immediately after the conductor opened the doors as the car approached the railroad crossing he heard the robber's command and crept between the seats. Crowell merely saw the outline of the robber who entered the car and for that reason could not identify him. Michaelis did not testify.

Rogles made two written confessions to the police, both of which were admitted in evidence against him. Neither of these confessions as introduced mentioned the plaintiff in error. In these confessions Rogles described the preparations made for the robbery and how it was consummated. Rogles pulled the trolley of the street car from the overhead wire so that the car could not proceed. His companions armed with revolvers seized the bags of money and put them in a Lincoln automobile, which was driven at high speed to Seventeenth street and Broadway, in East St. Louis, at which point the money was transferred to a Ford roadster. The Lincoln automobile was later abandoned at Kansas avenue and Fourteenth street and the Ford car was driven across the Mississippi river to St. Louis, Missouri. In the evening the proceeds of the robbery were divided among the participants in the crime, Rogles receiving $900 as his share.

Two police officers testified that on July 19, 1926, shortly after 1:00 P. M., they found in Kansas avenue, between Fourteenth and Fifteenth streets, in East St. Louis,

an abandoned Lincoln touring car. The front and rear license plates of the car bore different numbers. In the car the officers found a money sack, paper coin-wrappers and two shot-gun shells.

The defense of the plaintiff in error was an alibi. Five witnesses, including himself, testified that he attended the opening of Pansci's Italian restaurant at 910 North Seventh street, St. Louis, Missouri, for approximately half an hour shortly after 12:00 o'clock, noon, on July 19, 1926. These witnesses variously fixed the time the plaintiff in error arrived at the restaurant at 12:35, 12:45 or 1:00 P. M. Another witness testified that the distance from this restaurant to State and Twentieth streets, in East St. Louis, the scene of the robbery, was about four and one-half miles.

The plaintiff in error made a motion for a separate trial, and the motion was denied. The first contention for a reversal of the judgment is that the trial court's ruling upon the motion was prejudicially erroneous. The basis of the motion was that Rogles and Kennedy had made written confessions admitting their guilt of the crime charged and implicating the plaintiff in error; that these confessions were not made in the latter's presence; that they were incompetent against the plaintiff in error, and that if admitted in evidence they would be prejudicial to his defense. The State's attorney, in resisting the motion, represented that such confessions as might be offered in evidence would not mention or involve the plaintiff in error. Upon this representation the motion was denied. No admission or confession by Kennedy was offered. Two confessions by Rogles were admitted, but they made no mention of the plaintiff in error. These confessions were competent against Rogles. No admission or confession implicating the plaintiff in error was offered or admitted in evidence. Hence the rule applied in *People* v. *Sweetin*, 325 Ill. 245, and invoked by the plaintiff in error, that where one of several defendants jointly indicted has made admissions or confessions impli-

cating co-defendants, a severance should be ordered unless the State's attorney declares that such admissions or confessions will not be offered in evidence on the trial, has no application to the instant case. Persons jointly indicted are usually tried together. The motion for a separate trial in a criminal case is addressed to the court's discretion, and its action in denying the motion is not subject to review unless it clearly appears that there was an abuse of that discretion. (*People* v. *Birger,* 329 Ill. 352; *People* v. *Covitz,* 262 id. 514; *People* v. *Gukouski,* 250 id. 231; *Gillespie* v. *People,* 176 id. 238; *Doyle* v. *People,* 147 id. 394.) The motion for a separate trial was properly denied.

Complaint is made of certain instructions given at the prosecution's request. The first instruction concluded: "Your oath imposes on you no obligation to doubt when no doubt would exist if no oath had been administered." It is argued that this instruction is a needless elaboration of a definition of a reasonable doubt and is therefore erroneous. The criticism is justified, yet the giving of the instruction does not constitute reversible error. *People* v. *Bell,* 328 Ill. 446; *People* v. *Zajicek,* 233 id. 198; *Watt* v. *People,* 126 id. 9; *Spies* v. *People,* 122 id. 1.

The fifth instruction informed the jury that an accused person is permitted to testify in his own behalf, and that when he does testify his credibility is to be subjected to the tests applied to any other witness. This instruction concluded with the statement that if, after considering all the evidence in the case, the jury should find that the accused person had willfully and corruptly testified falsely to any fact material to the issue in the case, they had the right entirely to disregard his testimony except in so far as it was corroborated by other credible evidence. The plaintiff in error argues that the jury might infer from the instruction that they could disregard only the testimony of the defendant and not that of any other witness. An instruction should not single out the testimony of the accused per-

son so as to cast suspicion thereon. (*People* v. *Bell, supra; People* v. *Schuele,* 326 Ill. 366.) The instruction was incomplete, but an incomplete instruction may be supplemented by another instruction. (*People* v. *Scimeni,* 316 Ill. 591; *People* v. *Cash,* 326 id. 104.) An instruction was given which made the concluding statement of the fifth instruction applicable to all witnesses. The two instructions, taken together, correctly stated the pertinent rule of law. It was the jury's duty to consider all the instructions as a series, and when so considered the inference that the testimony of the plaintiff in error might be disregarded for the reason stated, while the testimony of other witnesses could not for the same reason be ignored, cannot well be drawn.

Complaint is made of an instruction which it is said informed the jury that circumstantial evidence is legal evidence and may be sufficient to convict. The objection urged is that there was no circumstantial evidence in the case. The record fails to disclose that any such instruction was given at the request of the prosecution. An instruction upon circumstantial evidence requested by one of the defendants was given by the court. Obviously, the defendant who offered the instruction could not afterwards complain of it. There was direct testimony to establish the principal facts of the case. Circumstances shown by the evidence tended to connect and corroborate the direct evidence. It was shown, among other things, that an abandoned Lincoln touring automobile was found shortly after the robbery, containing a money sack, paper coin-wrappers and shot-gun shells. This evidence was circumstantial, but it was sufficient to justify the giving of an instruction on the competency of such evidence. When there are circumstances forming important links in connection with the direct evidence in a case, an instruction upon the law concerning the competency of circumstantial evidence is proper. *People* v. *Guido,* 321 Ill. 397, (pp. 415, 416.)

Finally, it is contended that, so far as the plaintiff in error is concerned, the evidence does not sustain the verdict and judgment. The argument made in support of this contention is, that five of the seven men aboard the street car were unable to identify the plaintiff in error. Manifestly, the mortorman and conductor were charged with the operation of the car and were occupied exclusively in the performance of that duty. Moreover, they were detained by one of the armed robbers in the vestibule of the car. The five employees of the company whose duty it was to guard the money were suddenly confronted by another robber, who, pointing a gun at them, commanded them to lie down. Seeking places of safety behind seats in the car, it is not strange that in the confusion that naturally followed only two of the five employees were able positively to identify the plaintiff in error as the robber who entered the car. It is the jury's province to determine the truth of the matter between evidence tending on the one hand to identify the defendant as a participant in the crime charged, and on the other to establish an alibi. A court of review will not set aside a conviction merely because the evidence is contradictory or because more witnesses testify in favor of the defendant than for the prosecution. Before such a court will substitute its judgment for that of the jury it must be clear that there is a reasonable doubt of the defendant's guilt and that the verdict is contrary to the weight of the evidence. (*People* v. *Gentile,* 326 Ill. 540; *People* v. *Bolton,* 324 id. 322; *People* v. *Scimeni, supra; People* v. *Hildebrand,* 307 Ill. 544.) It is impossible to say that the plaintiff in error and his witnesses are so completely entitled to belief as against the witnesses for the prosecution as to make it manifest that there is a reasonable doubt of his guilt. The verdict cannot, therefore, be set aside on the ground that it is not sustained by the evidence.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*