(No. 20032.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE CARSON, Plaintiff in Error.

*Opinion filed October 25, 1930.*

HAROLD LEVY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JOEL C. FITCH, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. COMMISSIONER EDMUNDS reported this opinion:

George Carson, plaintiff in error, was in the criminal court of Cook county convicted of larceny and sentenced to the penitentiary for a period of from one to ten years. He prosecutes this writ of error for review of the record.

Irving Meister, the complaining witness, testified that on December 15, 1927, he was a salesman for J. M. Hammerman & Sons; that between 2:00 and 2:30 in the afternoon of that day he was making a call on a customer at 2704 West Division street, near California avenue, Chicago; that he went there in his Ford coach and parked it directly in front of the premises; that in the back of his car were three grips and a box, containing coats and dresses; that when he parked the car he locked the door and the ignition; that he was in the store about twenty-five minutes and came out to get another grip; that when he came out he saw another Ford coach right alongside his car containing the grips and merchandise that had been in his car; that the glass in the left door of his car was broken and the door opened; that he rushed for the other car and was about one or two steps from its running-board when

the occupant sitting on the right of the driver and on the side towards witness threw a jack handle at witness, and that witness saw this occupant all the time from the time witness came out of the door of the store until the other car pulled away after said occupant threw the jack handle. Meister identified plaintiff in error as the occupant of the other car who threw the handle. On cross-examination Meister testified that the man whom he identified as plaintiff in error was wearing, at the time of the aforesaid occurrence, a dark suit and a gray cap, and gave witness a "rough look" when he threw the jack handle; that witness saw him several days later at the West North avenue police station and recognized him; that witness there asked him to give back the merchandise that he took; that he replied that he had not got it, and that at the police station he had on a dark suit and the same gray cap that he wore when he "robbed" witness' samples.

Plaintiff in error was arrested on the afternoon of December 19, 1927, by police officers George Ganschow and Arthur Neville. Ganschow testified that about three o'clock that afternoon he and Neville were driving east on Division street from California avenue and saw two men coming west in a Chrysler sedan; that in passing a car along the curb one of the two men in the Chrysler got up and looked into it; that witness turned around and followed the Chrysler; that it had no back seat; that plaintiff in error was one of its occupants and had a screw driver and a pipe wrench; that its occupants looked into several other cars along the street; that witness and Neville crowded it to the curb and arrested them, taking them to the police station, and that witness was present the next morning when Meister, after looking at a number of prisoners in two other cells, identified plaintiff in error as the man who threw the jack handle at him. On cross-examination witness stated that when arrested plaintiff in error was wearing a dark suit and a

gray cap. Neville's testimony was substantially the same as that of Ganschow.

Thomas Finnan, whose wife is a twin sister of plaintiff in error's wife, testified for plaintiff in error. His testimony was that he was an engineer in the Chicago fire department; that about one o'clock on the afternoon of December 15 plaintiff in error came to his house with Ethel Cantello, a friend of the families of witness and plaintiff in error; that plaintiff in error did not leave the house until the next morning; that plaintiff in error's wife had been there over a week, taking care of witness' wife, who had a new baby; that plaintiff in error had been there the day before and possibly every night during that time; that witness never saw plaintiff in error with a cap on and that he never owned or drove a Ford car. Being asked, on cross-examination, how he happened to fix the time as December 15, Finnan answered that at the police station he asked plaintiff in error when he was arrested; that he told witness it was the 21st of December for something that happened on the 15th, and that they "figured" the 15th was the time plaintiff in error was at the house.

Mrs. Cantello testified that her husband was a highway policeman; that she and her husband lived in the same apartment building as plaintiff in error and had known him for about nine years; that on December 15 she took her husband to work and then drove plaintiff in error over to Finnan's, arriving about one o'clock in the afternoon; that she stayed there until seven o'clock that evening and plaintiff in error was there all that time; that he was wearing a brown sweater, a brown hat and a light-gray overcoat; that to her knowledge he never owned a Ford car or a cap, and that there were also present at Finnan's that afternoon Mrs. Finnan's mother, Mrs. Ryan, and another sister of plaintiff in error's wife, Mrs. Egan.

Plaintiff in error testified that about ten o'clock on the morning of December 15 his wife called him on the Can-

tello telephone, and Mrs. Cantello called him to answer it; that his wife wanted him to come to the Finnan home that afternoon; that his car was being repaired and Mrs. Cantello offered to take him over there after she took her husband to work; that she and witness arrived at the Finnan home about one o'clock in the afternoon and he stayed there until the next morning without leaving the house; that he never owned or drove a Ford car; that on December 15 he wore a brown hat, a brown sweater and a gray overcoat; that he was not at 2704 West Division street at or about 2:30 on December 15, 1927, and was never there in his life; that he never owned or wore a cap; that when Meister looked at him in the police station witness was wearing a brown sweater, a brown hat and blue pants, and that he told Meister "he was giving the wrong party the rap." On cross-examination plaintiff in error stated that he was not working on December 15; that he worked the day before; that he had been working for about seven months as manager of a shoe repair shop on West Madison street; that he could not remember the number of it, but it was alongside the elevated over there; that he was not sick on December 15, and that Mrs. Ryan was at the Finnan home that afternoon.

Plaintiff in error contends that the evidence does not sustain the verdict and judgment and that there was, and is, a reasonable doubt as to his guilt, urging that the testimony of Meister identifying him as the guilty party stands uncorroborated and is unreliable, whereas plaintiff in error's alibi is supported by two other witnesses. It is the jury's province to determine the truth of the matter between evidence tending on the one hand to identify the defendant as a participant in the crime charged and on the other to establish an alibi. A court of review will not set aside a conviction merely because the evidence is contradictory or because more witnesses testify in favor of the defendant than for the prosecution. Before such a court

will substitute its judgment for that of the jury it must be clear that there is a reasonable doubt of the defendant's guilt and that the verdict is contrary to the weight of the evidence. (*People* v. *Giardiano,* 332 Ill. 476.) It is impossible to say that the plaintiff in error and his witnesses are so completely entitled to belief as against the witnesses for the prosecution as to make it manifest that there is a reasonable doubt of his guilt, and the verdict cannot, therefore, be set aside on the ground that it is not sustained by the evidence.

It is contended that the court erred in permitting officers Ganschow and Neville to testify as to the circumstances of arrest, because the statements made by them showed plaintiff in error to be willing to commit another and different crime. It is proper to prove the facts and circumstances attendant upon the arrest of a defendant for the crime for which he is being tried where such facts and circumstances logically tend in any degree to connect him with the perpetration of the crime. (*People* v. *Gallina,* 335 Ill. 270; *People* v. *Levato,* 330 id. 498; *People* v. *Durkin,* 330 id. 394; *People* v. *Scott,* 261 id. 165; *Scaff* v. *Commonwealth,* 14 S. W. (Ky.) 759; *People* v. *Winthrop,* 118 Cal. 85, 50 Pac. 390.) In the case at bar the question put to officer Ganschow was, "State the circumstances of that arrest." Counsel for plaintiff in error interposed, "I object to that; the defendant is here." The court overruled the objection. No further objection was made to the testimony of Ganschow detailing the circumstances, nor was any motion made to strike it, or any portion of it, from the record. So far as the abstract shows, no objection of any kind was made to the testimony of Neville. It cannot be said that the court erred in overruling the objection which was made. The real point of plaintiff in error seems to be that improper testimony was given in answer to a question which was not inherently improper. Where an improper answer is made by a witness to a proper and unobjectionable question, the

party claiming to be injured by the objectionable evidence should move to exclude it or ask an instruction directing the jury to disregard it, and if he fails to do either he can not complain. (*Chicago, Peoria and St. Louis Railway Co.* v. *Blume,* 137 Ill. 448; *People* v. *Nall,* 242 id. 284; *Delahoyde* v. *People,* 212 id. 554; *Montgomery* v. *Black,* 124 id. 57.) The state of the record is such that we cannot undertake to pass upon the propriety of allowing the testimony complained of to stand, or upon the question as to whether, if technically improper, allowing it to go to the jury in the present case would constitute reversible error.

Plaintiff in error insists that reversible error was committed in permitting the State's attorney to use inflammatory language in his closing argument. In support of this contention counsel calls attention to the following statement: "Now we have the defendant on the stand, and he makes the statement, when Meister says, 'That is the man'—let me see, what did he say? I have it here,—he said, 'You are giving the wrong guy the rap,' or something of that kind, using the gangland parlance." In the colloquy which followed, counsel for plaintiff in error objected to "the gangland parlance" and asked that it be stricken out. The motion was overruled. The language to which the State's attorney referred was used by plaintiff in error himself on the witness stand. In his comment upon the evidence the State's attorney had a right to discuss this language and its significance.

Complaint is made of certain other utterances of the State's attorney, but no objection appears to have been made thereto and consequently no ruling is presented for review. *People* v. *Weil,* 243 Ill. 208.

The court refused to give a certain instruction which dealt with presumption of innocence, and it is insisted that this constitutes reversible error. It appears that counsel for plaintiff in error offered another instruction which embodied the same substance and that this other instruction was given.

No error was committed in this connection. *People* v. *Langzem,* 307 Ill. 56; *People* v. *Popovich,* 295 id. 491.

Plaintiff in error states in his argument, without discussion, that the evidence failed to prove that Meister was the owner of the property alleged to have been stolen, and that the verdict of the jury was the result of passion and prejudice. The record does not lend any substantial support to either contention.

The judgment of the criminal court is affirmed.

Per CURIAM : The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*