THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MATTIE LEE, Plaintiff in Error.

*Opinion filed April 15, 1938.*

F. A. REISNER, for plaintiff in error.

OTTO KERNER, Attorney General, LESTER GEERS, State's Attorney, and A. B. DENNIS, (AUSTIN LEWIS, and ROSCOE FORTH, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Mattie Lee was found guilty of murder and sentenced to life imprisonment, by a jury in the circuit court of Madison county. Questions concerning her confession, the weight of the evidence and certain instructions are raised by this writ of error.

The evidence shows that Mattie Lee and Emma Levy, both colored, were not on friendly terms prior to November 10, 1936, the date of the homicide. They lived in a

negro colony in the north part of Venice, in Madison county. On the date mentioned, defendant observed Emma Levy as the latter was delivering pies, and followed her along the street. When Emma entered a house, defendant waited for her and when she came out, accused her of certain mistreatment. After an exchange of words, defendant drew a revolver from her purse and shot and killed Emma. Defendant was taken into custody and voluntarily gave her version of the shooting. The next day she made and signed a written confession, which, over objections, was admitted in evidence at the trial. The testimony of several witnesses who had seen the shooting was that deceased was not armed with any weapon, that her hands during the conversation with defendant were in plain view and that she made no demonstration toward defendant. A witness who carried deceased to her home after the shooting found no weapon upon her. Another witness testified that immediately after the shooting defendant said she shot deceased and had intended to kill her.

Self-defense was the plea relied upon to justify the killing. In support of this plea, defendant testified to several occasions, in addition to those mentioned in her confession, when deceased had jostled or bumped into her. There was some evidence in the record that deceased had threatened to harm defendant but no evidence that defendant had knowledge of these threats. She testified that Emma came toward her brandishing an open razor and said she was scared and shot to save herself. Two witnesses for defendant said they saw Emma coming toward Mattie with an open razor in her hand, that when the shot was fired Emma dropped the razor and a strange man picked it up and ran away with it. The testimony of these two witnesses concerning the razor was in direct conflict with that of four disinterested witnesses for the People, all of whom were in close proximity and eye-witnesses to the shooting. After carefully reviewing the evidence we are satisfied that the jurors were fully war-

ranted in rejecting the plea of self-defense, and were not animated by prejudice or passion in so doing.

As regards the confession, counsel for defendant objected to its introduction by asserting that the language was not the defendant's but was the language of the assistant State's attorney. The proof shows that the confession was dictated, read, signed and acknowledged by defendant before the chief of police, two other police officers and the assistant State's attorney, all four of whom signed it as witnesses. All three police officers who witnessed the making and signing of the confession testified at the trial that it was made freely, without threats, promises or duress and that she was told by the assistant State's attorney that it could or would be used against her. She said she was able to read and write and held a typewritten copy of the confession in her hand where she could watch it and hear the assistant State's attorney read it back to her. The three police officers all testified that at the time she made the statement she was composed, was not sick and seemed to understand fully what was taking place. The proof shows conclusively that she read the typed instrument, said it was correct, and freely signed and acknowledged it. Under these circumstances she adopted the phraseology of the statement as her own, and the trial court properly admitted it in evidence.

Counsel for defendant claims to have been overmatched at the trial and his client unduly prejudiced by the State's attorney, three assistant State's attorneys and a private attorney retained by the sister of Emma Levy. The statement as to the number of prosecutors taking part in the trial is not borne out by the record. Only one assistant State's attorney, (who typed defendant's confession,) and the private counsel, were present and took part in the case. A motion by the State's attorney to permit the private counsel to assist in the prosecution of the case, made at a *habeas corpus* hearing prior to the trial, was allowed by the court.

Counsel for defendant then knew that this private counsel would assist the People, and made no objection to it. Such an objection, even if made, would have been specious.

Objections were made to certain instructions given for the People. Instruction three is complained of because it did not clearly inform the jury of the meaning of the term "reasonable doubt." No authorities are cited to show that the instruction was erroneously given. We have often held that the phrase "reasonable doubt" is self-defining. (*People* v. *Auriene,* 361 Ill. 440.) The second sentence of the instruction concerning "reasonable doubt" was approved in *People* v. *Buskievich,* 330 Ill. 532, 544, and the last sentence thereof was approved in *Spies* v. *People,* 122 Ill. 1, 82. The substance of questioned instruction four was likewise approved in *Spies* v. *People, supra,* at page 251, and *People* v. *Bell,* 328 Ill. 446. Counsel asserts that instruction nine was identical with an instruction given and condemned in *Marzen* v. *People,* 173 Ill. 43, 59. This assertion is not correct. In *Marzen* v. *People,* the word "deliberate" was used in the instruction and we condemned it because of the use of that word. In the present case the word "deliberate" was not used. This difference is shown in *People* v. *Wynekoop,* 359 Ill. 124, 131. Instruction ten related to implied malice and defendant has cited *People* v. *Corbishly,* 327 Ill. 312, as authority against it. In that case we held the first part of the instruction to be a mere abstract statement of the law, with no direct application to the facts and showed how the instruction should have concluded. In the present case instruction ten met the objections voiced by us in the *Corbishly case,* and substantially followed our suggestions as to how it should end. General objections made to several other instructions have received our attention but they are not of sufficient merit to warrant detailed consideration in this opinion.

Counsel has argued at some length that the People have failed to produce evidence to establish defendant's intent

to kill Emma Levy. It is not necessary to prove specific intent to kill in a trial for murder, as the proof need only show an unlawful killing with malice aforethought. *People* v. *Guido,* 321 Ill. 397.

After a careful review of the whole record, we are of the opinion that defendant had a fair and impartial trial, free from substantial error of any kind.

The judgment of the circuit court is, therefore, affirmed.

*Judgment affirmed.*