(No. 39402.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JEROME REESE, Appellant.

*Opinion filed January 25, 1966.*

GERALD W. GETTY, Public Defender, of Chicago, (FREDERICK F. COHN and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Defendant, Jerome Reese, was convicted of attempted robbery in a bench trial and was sentenced to the penitentiary for a term of not less than two nor more than six years. The Appellate Court, First District, affirmed, (58 Ill. App. 2d 443,) and we granted leave to appeal.

The sole contention is that defendant's guilt was not established beyond a reasonable doubt. The facts are set out fully in the majority and minority opinions of the Appellate Court and will be only briefly summarized.

The prosecuting witness, Dr. Max Roseman, testified that two men approached him in his place of business and announced a "stickup". He called to his porter, John Dale, who came from a back room with a gun in his hand. He shot at the second person, who fled. He then fired past his employer (the latter apparently being shoved toward him by defendant,) and the bullet struck defendant in the right temple. He fell to the floor unconscious, the police were called and defendant was removed to the hospital.

The doctor's statement that defendant announced a "stickup," "had his hand at his pocket like it was a gun" and turned the doctor around and walked him toward the back of the office was denied by the defendant. He said that he went into the doctor's office to get some glasses, that he did not know the person behind him, that he was pushed by the other person into the doctor and thereupon Dale rushed out shooting.

There are a number of circumstances which tend to raise a doubt as to defendant's guilt. He lived within five blocks of the doctor's office and conducted a tailoring busi-

ness in his home. He and the porter, Dale, had known each other for a number of years, and in fact, his apartment was below that of Dale's mother and sister. A bag containing material for clothing, which he was carrying when he entered the office, was found beside his body by the police. It seems strange for a man to attempt a robbery so close to his neighborhood, especially when he was well acquainted with the porter of the establishment, and even more strange that he carry a tailor's bag rather than a weapon during the attempt.

When questioned at the hospital by a police officer, defendant, with a bullet in his head and while in great pain, stated that he went in to buy glasses. His later statements to the officer differed from the first, but they are not entirely inconsistent with his testimony at the trial that the person behind him pushed him into the doctor and announced that it was a "stickup".

Dale did not inform his employer after the shooting that he knew the defendant, which failure is hardly the natural reaction of a person who had just thwarted an attempt to rob his employer by shooting a person known to him. Even at the trial he seemed reluctant to admit how well he knew defendant. Dale's attitude could have stemmed from apprehension that there would be retaliation if it became known that he had shot a customer whom he knew rather than a robber. There were other discrepancies. For example, the doctor said that defendant had his hand at his pocket while Dale said that he had both hands on his employer's shoulders. Just how the tailor's bag was carried during this time does not appear. According to the testimony nothing was removed from his pockets, but the bag was found beside him where he fell.

Oddly, of the three occurrence witnesses, the People called only the doctor, Dale having been called by the defendant. The prosecution was, of course, under no duty to call Dale, the witness who actually fired the shot that

wounded defendant, but it causes one to wonder whether the failure to use such a witness, present in open court, was from a reluctance to vouch for his veracity or fear that he could not stand up under cross-examination.

We attach great weight to the findings of the trier of fact, including his appraisal of the credibility of witnesses, but they are not conclusive and it is our duty to set a conviction aside where the evidence is so unsatisfactory as to raise a reasonable doubt of a defendant's guilt. (*People* v. *De Stefano,* 23 Ill.2d 427; *People* v. *Butler,* 28 Ill.2d 88; *People* v. *Pellegrino,* 30 Ill.2d 331.) In our opinion the totality of the circumstances here leaves a reasonable doubt as to the defendant's guilt and the conviction cannot stand.

The judgments of the circuit court of Cook County and of the Appellate Court are reversed.

*Judgments reversed.*