People of the State of Illinois, Plaintiff, v. James Crawford, Defendant.
People of the State of Illinois, Plaintiff-Appellee, v. Richard A. Hollis, Contemnor-Appellant.

Gen. No. 11,160.

Fourth District.

October 30, 1969.

SMITH, J., dissenting.

Richard A. Hollis, State's Attorney of Sangamon County, pro se, of Springfield, appellant.

Charles H. Delano, of Springfield, for appellee.

CRAVEN, J., delivered the opinion of the court.

The issue in this case is the permissible scope of an order for pretrial discovery in a criminal case. The defendant Crawford was indicted for the offenses of aggravated battery and battery. He filed a pretrial motion for discovery requesting a list of witnesses, physical evidence, written confessions and a list of witnesses to any oral confessions. This motion was allowed and there was compliance. Subsequently the defendant moved for further discovery seeking a copy of all statements of any witnesses, a copy of all memoranda of oral statements of witnesses together with a list of witnesses to any oral witness statements, and an inspection by the court of the

State's file to determine the existence of any statements, and also an inspection by the court of all police files to determine the existence of any such witness statements, and for a copy of police reports regarding these matters. Ultimately this motion was allowed and the State's Attorney was ordered to comply within a specified time. Upon his refusal to comply with the order the State's Attorney was found guilty of contempt of court and a fine of $10 was imposed. The State's Attorney appeals.

It was and is the position of the State's Attorney that the allowance of the second motion and the order based thereon were void for the reason that there was no legislation, Supreme Court Rule or Supreme Court decision requiring a State's Attorney to furnish the information there requested, and that in the absence of such precedent the trial court was without authority to allow the motion, enter the order and make the finding of contempt.

In his memorandum opinion the trial judge indicates that there is a variation in various counties as to the availability to a defendant of information in the State's file. In some cases State's Attorneys appear to have an "open file" policy and motions for discovery are unnecessary. Further, it appears that even within the same county the amount of information given to a defendant from the State's file varies from case to case in that county. Indeed in the oral argument of this case the State's Attorney, with commendable candor, asserted that he often makes witnesses' statements available to some defendants in some cases, but not in all cases.

We believe it to be self-evident that the nature and extent of preparation for defense are necessarily dependent upon the quality and quantity of pretrial discovery available to the defendant. It is equally self-evident that the reality of "plea negotiation" makes such information relevant to the defendant's subsequent course of conduct —whether a plea of guilty, a bench trial or a jury trial.

Paragraph 114–13 of chapter 38, Ill Rev Stats 1967, provides that discovery procedures in criminal cases shall be in accordance with Supreme Court Rules. There are no Supreme Court Rules on discovery in criminal cases. The nonexistence of such Rules suggests to us that the Supreme Court has determined that discovery in criminal cases should be on a case-by-case basis, at least until the emerging principles relevant to pretrial discovery surface and take form. We are fully aware that able jurists, law professors, attorneys and others are examining into and suggesting changes in the administration of criminal justice. Rules for criminal discovery in the federal system are in experimental states of development (see 1 ALR Fed 252) and the variables to be found from state to state seem infinite. See 7 ALR3d 8.

In this connection we note the tentative draft of "Standards Relating to Discovery and Procedure Before Trial" issued by the American Bar Association Project on Minimum Standards for Criminal Justice, published in 1969. The rules for pretrial discovery in criminal cases, unanimously adopted by a distinguished committee, are prefaced by the observation that the extensive discovery there recommended was broader than that used in any jurisdiction in the United States and was designed to correct general dissatisfactions with criminal litigation. See: ABA Standards, Discovery and Procedure Before Trial (Tentative Draft, 1969), p 2 et seq.; 64 Harv L Rev 1011 (1951); State v. Tune, 13 NJ 203, 98 A2d 881 (1953).

The Illinois cases on the issue of pretrial discovery, discovery and the use of witness statements for impeachment were reviewed by this court in People v. Endress, 106 Ill App2d 217, 245 NE2d 26 (4th Dist 1969). In People v. Cagle, 41 Ill2d 528, 244 NE2d 200 (1969), our Supreme Court reviewed the same issue in the light of the recent United States Supreme Court decisions in Giles v. Mary-

land, 386 US 66, 17 L Ed2d 737, 87 S Ct 793, (1967), and Brady v. Maryland, 373 US 83, 10 L Ed2d 215, 83 S Ct 1194 (1963). The court, in Cagle, spoke of the Illinois rule relating to the use of statements, at least for impeachment purposes, as encompassed in the Illinois decisions of People v. Moses, 11 Ill2d 84, 142 NE2d 1 (1957), and People v. Wolff, 19 Ill2d 318, 167 NE2d 197, cert den, 364 US 874, 5 L Ed2d 96, 81 S Ct 119 (1960), and then observed:

> "Defense counsel argues that the Illinois rule limiting the use of such favorable reports to impeachment purposes at the time of trial is too restrictive in that it hinders trial preparation and therefore violates the due process requirements for a fair trial. In the view we take of this case it is not necessary to consider that issue, since the trial court here failed to follow the Illinois rule, and in effect precluded the use of the favorable police report, even for impeachment purposes. In our judgment such action was tantamount to a suppression of evidence and itself constituted a violation of the due process clause. Giles v. Maryland, 386 US 66, 100, 17 L Ed2d 737, 87 S Ct 793 [(1967)]; Brady v. Maryland, 373 US 83, 87, 10 L Ed2d 215, 83 S Ct 1194 [(1963)]; Napue v. Illinois, 360 US 264, 269, 3 L Ed2d 1217, 79 S Ct 1173 [(1959)]; People v. Wolff, 19 Ill2d 318, 323 [167 NE2d 197, cert denied, 364 US 874, 5 L Ed2d 96, 81 S Ct 119 (1960)]. . . ." People v. Cagle, 41 Ill2d 528, 534–535, 244 NE2d 200, 203 (1969).

In People v. Tribbett, we concluded that it was error for a trial court to refuse the request of the defendant to inspect, prior to trial, items of physical evidence. People v. Tribbett, 90 Ill App2d 296, 232 NE2d 523 (4th Dist 1967). The Supreme Court granted leave to appeal but found it unnecessary to consider the discovery aspect of the case. (41 Ill2d 267, 242 NE2d 249 (1968).) We

234

read the opinion, however, as we observed in Endress, to be an indication that the defendant had the right to the pretrial discovery there requested. See also: People v. Hoffman, 32 Ill2d 96, 203 NE2d 873 (1965); People v. Watson, 36 Ill2d 228, 221 NE2d 645 (1966).

Many of the cases cited by the People for the proposition that pretrial discovery is not available to a defendant in criminal cases in Illinois were discussed and cited by us in Endress.

In Endress the issue related to the discovery of items of physical evidence which the prosecution intended to introduce at trial. The order here is more encompassing than the order in Endress. Our observation in Endress and Tribbett that a trial court has the inherent authority in appropriate cases to order pretrial discovery need not be limited to items of physical evidence when further discovery is deemed necessary in order to ensure a defendant a fair trial.

Viewing the language in Cagle in the light of the Giles and Brady cases, it seems fair to conclude that the inherent authority of the trial court need not be limited to the question of statements to be used for impeachment. The cases of People v. Hoagland, 83 Ill App2d 231, 227 NE2d 111 (2nd Dist 1967), and People v. Hall, 83 Ill App2d 402, 227 NE2d 773 (3rd Dist 1967), limiting such discovery to discovery at the time of trial and for impeachment purposes only, may thus not now be persuasive authority.

The brief of the State further asserts that "Pretrial discovery of the nature requested in this case should not be allowed to a defendant until such time as the State is allowed the same type of discover [sic] from the defendant. . . ." No issue of the right of the prosecution to discovery is presented by this case for the reason that no motion for discovery was made by the prosecution. It would thus be an academic exercise for this court to speculate upon the issue of discovery by the prosecution and the

scope of such discovery and the limitations that might arise by reason of the defendant's right under the Fifth Amendment. In this connection, see Part III at (16–17) of the tentative draft of Minimum Standards Relating to Discovery and Procedure Before Trial. See also: 30 ALR 2d 480; Jones v. Superior Court, 58 Cal2d 56, 372 P2d 919, 22 Cal Rptr 879 (1962).

Failure to grant discovery or severe limitations upon pretrial discovery limiting the same to statements used for impeachment tend not to lend finality to the disposition of criminal cases. It is clear now that the failure to make available to a defendant evidence which would be of substantial benefit to him and which could materially affect the outcome of the case may result in the loss of a conviction. Limitation of discovery to statements at trial for impeachment can result in unwarranted trial delay and a severe limitation upon the effective use of such statements. Cases that illustrate the problem are: People v. Hoffman; People v. Cagle; People v. Sumner, 72 Ill App2d 258, 218 NE2d 236 (4th Dist 1966), revd and remanded, People v. Sumner, — Ill2d —, — NE2d — (1969). The last cited case, although clearly referring to the availability of a statement for impeachment purposes, amply illustrates the possible consequences attendant upon limitations of discovery. In Sumner the trial court failed to require the prosecution to furnish certain requested pretrial statements. There was an appeal and this court remanded to determine the availability and producibility as well as the relevancy of the statements and if the denial of the statements might reasonably have affected the verdict to grant the defendant a new trial. Upon remand the trial court determined the existence and producibility of the statements but that there was no prejudicial error in the failure to produce them for use in impeachment. Upon further appeal, we affirmed (92 Ill App2d 386, 234 NE2d 537 (1968)). The Supreme Court

granted leave to appeal and reversed and remanded for a new trial. In the course of its opinion the Supreme Court made reference to the American Bar Association Standards Relating to Discovery and equated the refusal of the prosecution to produce the statements with suppression of evidence which deprived the defendant of due process in the context of Brady v. Maryland.

 We view this case in the context of the authority of the trial court to order pretrial discovery in order to ensure the defendant a fair trial. It is not the prerogative of this court to promulgate rules relating to discovery in criminal cases, nor do we here assert the existence of such authority in this court. We have concluded, however, that the trial court has the authority to order discovery and that that authority is inherent and is based upon the affirmative duty to afford the defendant a fair trial. The motion for discovery here is very broad and the order allows the motion in general terms. While the order is not void for want of authority, necessarily issues will arise in the circuit court as to the specifics of items discoverable. Such issues must be resolved in the trial court and resolution of those issues must be determined upon a case-by-case and indeed possibly upon an item-by-item basis. Thus this case must be remanded to the circuit court for further proceedings on the discovery issue.

 The refusal of the State's Attorney to obey the instant order is not such as can in any way be characterized as wilful contempt. It is clear that the State's Attorney's noncompliance was a good faith condition precedent to ascertain the nature and scope of permissible pretrial discovery in criminal cases. Thus in this case, as in Endress, it is appropriate that the order imposing a sanction be vacated upon compliance. This case is, therefore, remanded to the Circuit Court of Sangamon County for further proceedings consistent with the views herein expressed.

237

Order for discovery affirmed; cause remanded to the Circuit Court of Sangamon County for further proceedings.

TRAPP, P. J., concurs.

SMITH, J., dissenting.

SMITH, J. dissenting:

"Shoemaker, stick to your last." This proverb is contained in Natural History Book 35, § 84, by Pliny the Elder (AD 23–79), and referred to in Plutarch's "Moralis." Hoary and timeworn as it is, it epitomizes my reasons for reversing this case outright. I would reverse both judgment orders and remand for further appropriate proceedings. In so doing, I do not recede from the position previously taken by this court in Tribbett, Endress and Sumner I. In each of those cases we were dealing with specifics. In each of those cases we relied upon the inherent power of a trial court to insure a defendant a fair trial or upon case law indicating the propriety of the principles announced in those cases. In none of them did we come close to considering the sweeping motion and the sweeping order that we review here. There we were passing upon questions of what is discoverable and how to get it. In the case at bar, the sole issue before us on the question of pretrial discovery is not what the defendant is entitled to discover, but rather the method to be used to determine whether or not there is anything to discover and how to get it.

Chapter 38, § 114–13, Ill Rev Stats 1967, provides that discovery procedures in criminal cases shall be in accordance with Supreme Court rules. Whether this statute be regarded as a grant of authority or a statement of public policy, it implies nowhere that a trial court has the authority to initiate discovery rules nor that this court may do so. While the majority disavows that they are establishing a rule or have any authority to do so, they

are in fact promulgating a threefold rule which has the effect of (1) permitting discovery of material not heretofore discoverable in this State under any decision, rule or statute, (2) requiring the State's Attorney to state whether he has any such material or to disclaim its existence, and (3) if he disclaims its existence in whole or in part, require him to produce his file so that the court may determine whether or not there is anything worthwhile to be turned over to the defendant. In his memorandum opinion, the trial court states that the defendant cannot have a fair trial without pretrial discovery and that it is his belief that we have progressed to a point where the defendant is entitled to such pretrial discovery. By its approval of the trial court's order, the majority opinion apparently subscribes to that doctrine. There are no facts in the trial court's opinion nor in the majority opinion upon which to base such a conclusion, unless it can now be said that pretrial discovery in every criminal case is an essential to a fair trial. Facetious argument suggests that it necessarily follows that the trials heretofore held in this State during the past 150 years without pretrial discovery have not been fair trials. Such a conclusion, of course, is nonsense. It is equally nonsensical to lay down a rule that pretrial discovery in every case is an essential to a fair trial. If the trial court's order is approved here, we announce a rule or a policy that unlimited pretrial discovery is necessary for a fair trial in every case. In so doing, we usurp the authority that rests with the Supreme Court, not with either the trial court or this court. It is a practice and a rule that is a far-reaching departure from any practice or procedure which has been heretofore followed or approved anywhere in this State.

I have no quarrel with the proposition that the State's Attorney may, if he opts, open his file to the defendant, to the defendant's attorney, or to anybody else, and a police department may do likewise. Under our system

of jurisprudence, the obligation that the guilty as well as the innocent receive a fair trial is an essential part of the obligation of the State's Attorney and his associated law enforcing agencies. I would therefore issue a caveat to State's Attorneys that the failure to disclose to a defendant information which would substantially affect the innocence or guilt of such defendant, retard or deprive him of a proper defense or perhaps even affect his punishment may under the authorities cited in the majority opinion result in punishment for contempt, the loss of a conviction, a retrial or a dismissal of the case. If whenever and wherever prosecutorial misconduct, malfeasance or misfeasance occurs in this obligation of the State's Attorney, then the sanctions of either the trial court or this court should be swift, certain and appropriate.

A reasonable acquiescence in these principles by the prosecuting agencies will avoid the never ending post-conviction hearings which are worrisome, wearisome, and exhausting to both the trial courts and reviewing courts.

I entertain no doubt but that the trial court and the majority seek a fair trial. So do I. We part company on how it is to be assured. I cannot subscribe to the doctrine that pretrial discovery is necessary to insure a fair trial in every case. I cannot subscribe to the proposition that pretrial discovery is required in this case. There is nothing in this record except the unsupported conclusion of the trial court and its affirmance by the majority opinion that it is necessary to insure a fair trial. Grant it where necessary to a fair trial; deny it where it is patently only a trial tactic. By reversal, the trial of the principal case will be resumed in the trial court. The State's Attorney may then do a little soul searching and either comply with the principles stated here or realize that a conviction otherwise obtained is stillborn. In the meantime, the trial court and this court

should "stick to their lasts," i. e., attend to our own proper business of trial and review, respectively, and not assume the prerogative of the Supreme Court, either to promulgate a far-reaching rule or to establish a far-reaching policy on pretrial discovery.