THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HOWARD C. ELSTON, Defendant-Appellant.

Fourth District    No. 13486

Opinion filed February 10, 1977.—Rehearing denied March 16, 1977.

Richard J. Wilson and Richard J. Geddes, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Wayne Golomb, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the Circuit Court of Sangamon County, defendant Howard C. Elston was found guilty of armed robbery and attempt murder. The court entered judgment on the attempt murder and sentenced defendant to 30 to 90 years imprisonment. On appeal, defendant contends that he was deprived of a fair trial because the State failed to furnish to him before trial information concerning exculpatory evidence which the State had been ordered to provide pursuant to Supreme Court Rule 412(c) (Ill. Rev. Stat. 1973, ch. 110A, par. 412(c)).

Martin and Hazel Baptist, James and Juanita Best and Marion Davis

testified as occurrence witnesses on behalf of the State. The substance of their testimony was that on October 7, 1973, the Baptists were on duty behind the bar of their business, Manuel's Tavern. At about 10:50 p.m., a man entered and ordered a bottle of beer and a hot dog. Mrs. Baptist served him and brought him a jar of mustard. After a short time, the man walked around the bar toward the restroom. He returned from the restroom and, about 12 feet away from Mrs. Baptist, pointed a pistol toward Mr. and Mrs. Baptist. Mr. Baptist walked toward the back room and the man shot him. Mr. Baptist got through the door to the back room, closed the door, and the man fired twice through the door, from a distance of about three feet. The man then demanded and got money from the cash register and the customers in the tavern. Each of these witnesses made a positive in-court identification of defendant as the robber.

Other evidence introduced by the State established that a latent fingerprint had been found on the top of the mustard jar at Manuel's Tavern and could be positively identified as matching defendant's fingerprint. It was also established that a gun found in defendant's possession on November 12, 1973, could be matched ballistically with spent projectiles found in Manuel's Tavern shortly after the robbery. The defendant presented neither occurrence nor alibi evidence.

The principal issue on appeal concerns the State's failure to provide to defendant prior to trial, information regarding prior attempts by the five occurrence witnesses to identify the perpetrator of the crime. Several months before trial, upon defendant's motion, the court ordered the State to disclose to defendant, "[t]he composition and date of any lineup including names of those present and whether or not defendant was identified and, if so, by whom" and "[a]ll other matters and things provided in Supreme Court Rule 412." The order also provided that the duty to disclose was continuing. Rule 412(c) requires the State, subject to protective orders not involved here, to disclose to defendant "material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged * * *."

The discovery material furnished by the prosecution made no mention of a lineup but did contain a police report which stated:

> "Cooperating witnesses to the offenses all stated that the suspect in question was similar to our file number 14011. Suspect was identified as Robert J. Taylor. All witnesses went on to state that this mug shot resembled to the person performing the crime except for the hair. The hair of the suspect was black and pulled slickly back to his head."

After the jury was selected and sworn, the assistant State's attorney

prosecuting the case stated, out of the presence of the jury, that about eight days earlier he had learned that a lineup had taken place. He further stated that about two court days before that he had determined that two lineups had taken place, that defendant was not present at the first lineup but was present at the second and that some witnesses were not able to identify defendant at the second lineup. The defense then made a motion to suppress any identification of the defendant to be made by the occurrence witnesses. The court denied the motion but continued the case from that time, mid afternoon, to the next morning and ordered the State to give the defendant any pertinent information it had. Before the proceedings recessed, defense counsel inquired if any mug shots were shown to the witnesses. The prosecutor responded that he wasn't sure but that some may have been shown to the witnesses.

The next day, the Baptists both testified that they had attended the lineup at which defendant was present and had not been able to make any identification of the culprit. Juanita Best testified that she did not attend that lineup. James Best and Marion Davis both testified that they attended the lineup in which defendant was present and identified a person named Jack Daugherty as the one who committed the offense. During an examination out of the presence of the jury, Juanita Best testified that about two weeks after the occurrence, a police officer brought five black and white mug shots of other people and a polaroid colored picture of defendant to the house for her to examine and she identified the polaroid picture of defendant as being a picture of the robber. Further testimony revealed that the Baptists had also been shown these photographs but were not able to make an identification. Marion Davis testified that she had been presented a number of black and white pictures and a colored picture and identified the colored picture as that of the perpetrator of the crime.

In *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the United States Supreme Court held that an accused was denied a fair trial when, after demand by the accused, the prosecution had withheld from the accused, until after the trial, information favorable to his defense. Supreme Court Rule 412(c) requires that information to which the accused is entitled under *Brady v. Maryland* must be provided before trial. (*People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12.) Here, evidence that two of the five occurrence witnesses who testified at trial had misidentified the culprit at a lineup and that another two had been unable to make any identification was clearly information that would tend to negate defendant's guilt and was therefore favorable to the accused. Likewise, to a lesser degree, information that the police, in showing several of these witnesses pictures of likely suspects, presented a

polaroid picture of defendant and black and white mug shots of the rest, was information favorable to the defendant. The difference between defendant's picture and that of the others could be considered to suggest to the witnesses that defendant's picture was the one to select.

In *Parton,* we cited with approval the statement made by the court in *People v. Dixon* (1974), 19 Ill. App. 3d 683, 688, 312 N.E.2d 390, 394, that if favorable information has been improperly withheld, the reviewing court will not "speculate as to what use the defense could or would have put the evidence in question." There, the favorable information was withheld until after trial. Here, the favorable information was revealed during trial. The defendant used the witnesses' inability to make an identification or their misidentification at the lineup to impeach the in-court identification by those witnesses. He also prevented the jury from hearing evidence of the identification made by some of the witnesses by use of the polaroid picture and mug shots. Since the other evidence linking defendant to the crime consisted of his possession of the gun linked to the offense and the latent fingerprint, the question of identification was of great signficance. We cannot say that defendant would not have been able to make other even more effective use of the favorable information had he been timely given the discovery to which he was entitled.

The State argues that the defendant is not entitled to reversal because the defendant should have told his counsel that he had been in a lineup and because the failure to furnish discovery was not due to bad faith on the part of the State's attorney's office. In *People v. Raymond* (1969), 42 Ill. 2d 564, 248 N.E.2d 663, the court held that a defendant could not complain of the State's failure to disclose to him that his clothes had been subjected to a laboratory analysis and the results of the analysis when the defendant already had that information before trial. In the instant case, defendant should have told his attorney that he was in a lineup, but the record does not show that the defendant knew what identification the witnesses had made at the lineup. The record also fails to show that defendant had any knowledge that several of the witnesses had been shown the polaroid picture and the black and white mug shots. The trial judge apparently found that the State had acted in good faith and that the mistake occurred because of a change in the assistant assigned to try the case and because of a mistake made by the police. The record would support such a finding.

Supreme Court Rule 412(f) requires the State to ensure that a free flow of information is maintained between the prosecutor and the personnel of other agencies investigating the case so that the State has available all material information and can give the required discovery. That process

broke down in this case. Much of the difficulty arose because the police departments of Decatur and Springfield were both investigating the defendant. Even though no bad faith was involved, the detriment to the defendant was the same.

Had the prosecution informed defense counsel eight days before trial that it had discovered that a lineup had been held and then further informed defense counsel two court days before trial that it appeared two lineups had been held and that some witnesses had not been able to identify the defendant, much difficulty might have been prevented. The defense might then have had sufficient time to make further investigation and to adjust trial strategy so the trial could have started as scheduled. If this could not have been done, the court could have granted a continuance without the disruption in court schedules that would have occurred if the court had allowed defendant's motion for a mistrial which was subsequently made when defense counsel became aware of all of the favorable information which had not been disclosed. The trial judge proceeded cautiously as each new revelation of favorable information came to light and gave the defendant various recesses in an attempt to enable the defendant to utilize the new information. As the trial progressed, defense counsel's task of incorporating the new information into trial strategy became more difficult. Repeated short recesses tended to disrupt the trial and were insufficient to provide defense counsel the opportunity to explore the possible uses of the newly discovered information. We determine that defendant was thereby denied a fair trial.

Accordingly, we reverse the judgments from which appeal is taken and remand the case to the Circuit Court of Sangamon County for a new trial.

Reversed and remanded.

CRAVEN, P. J., and MILLS, J., concur.