THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL J. HONN, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS LEE KELLY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUSSELL MARSTON HUNT, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY VANCE, Defendant-Appellant.

Fourth District   Nos. 13439, 13747, 13286, 13728 cons.

Opinion filed April 14, 1977.

Michael L. Pritzker, David M. Schneider, Marvin Jay Glass, and Marvin Leavitt, all of Pritzker and Glass, Ltd., of Chicago, for appellants.

Paul R. Welch, State's Attorney, of Bloomington (G. Michael Prall, James E. Hinterlong, James R. Sanders, and John X. Breslin, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The four cases discussed in this opinion involve allegations that the judge who sentenced the defendants abused his discretion in arbitrarily denying probation. Each defendant was convicted of delivering controlled substances in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401), and each defendant was sentenced by the same judge. Owing to the similarity of these cases, we have on our own motion consolidated them for opinion.

The charges against 22-year-old Russell Hunt arose from an incident occurring on September 12, 1974, when Christy Schaefer, a Metropolitan Enforcement Group (M.E.G.) agent, appeared at the door of a house occupied by defendant's brother. The defendant answered the door and Schaefer sought to purchase some of defendant's brother's drugs. Defendant complied with the request and sold the agent 50 "hits" of lysergic acid diethylamide (L.S.D.) for $80. Defendant was convicted of delivery of a controlled substance after a bench trial.

Defendant appeals his sentence, alleging that he was arbitrarily denied probation. At the sentencing hearing, a letter from the director and an addiction therapist of Project Lighthouse, a drug rehabilitation center associated with Mennonite Hospital in Bloomington, was introduced into evidence. The letter recommended that defendant be sentenced to probation and stated that, after a detailed evaluation, defendant was not found to be a drug addict. Defendant's high school principal testified at the hearing that defendant was a leader and solid citizen who should be placed on probation. Defendant's junior college dean also testified that defendant was a good athlete and a conscientious student who should be granted probation. This latter opinion was based on the witness' knowledge of defendant's character and a personal acquaintance with the rehabilitative prospects or lack thereof at Stateville Prison. Defendant's employer testified to defendant's high character and good work habits. The State presented no evidence in aggravation; however, the court sentenced defendant to the penitentiary for 1 to 3 years after stating:

> "While individual defendants should and do receive individual consideration, it is also—has to be to some extent an obligation upon the Court to attempt to discourage and prevent the problems that are associated with deliveries and use of narcotics, drugs, and other controlled substances."

Defendant's motion for bail pending appeal was also denied by the trial court.

The charges against 25-year-old Michael Honn arose from an incident occurring on July 11, 1974, at a residence the defendant shared with five other persons in Bloomington. M.E.G. agent Eugene Maxwell went to the residence to purchase a quantity of methylenedioxyamphetamine (M.D.A.) from Michael Patrick. When Maxwell entered the residence he met the defendant who told him Patrick was at work. Maxwell asked the defendant to phone Patrick at work, which he did. Patrick told the defendant where his M.D.A. was located, what the price should be, and he asked the defendant to deliver it to Maxwell. Defendant then delivered 2.3 grams of M.D.A. to Agent Maxwell.

Defendant pleaded guilty to the offense of unlawful delivery of a controlled substance. At the sentencing hearing, the State presented no evidence in aggravation and it made no sentencing recommendation. The presentence report reflected that the defendant did not have a prior criminal record. The defendant had completed 3 years of art studies at Illinois State University which he was financing with part-time employment, scholarships, loans and grants. Defendant and his wife are separated and their 3-year-old daughter resides with her mother.

Two witnesses testified for the defense. The director of Project Lighthouse stated, after having had his staff evaluate the defendant, that he did not have a drug dependency and that he did not fit the pattern of a member of the drug subculture. One of the defendant's fellow employees in the Browndale-Kaleidoscope foster home program also testified that defendant was a capable worker and that his honesty had never been questioned.

Defense counsel also introduced a letter of reference from a registered nurse and director of Phoenix 7, a rehabilitation program for drug abusers where defendant was a volunteer worker. Defendant also performed volunteer services at the Andrew McFarland Zone Center for retarded children when he lived in Springfield. He worked with the children on arts and crafts projects, using materials purchased with his own funds. After hearing all of this evidence, the court sentenced the defendant to serve 1 to 3 years in the penitentiary and also denied defendant's motion for bail pending appeal.

The charges against 20-year-old Jeffrey Vance arose from an incident occurring on November 13, 1974. I.B.I. agent Dennis Higgins testified that he phoned a Bloomington residence on November 12, 1974, to arrange for the purchase of 2 ounces of M.D.A. at $650. Higgins thought he was speaking to the defendant, but Dan Hunt testified for the defense stating that he arranged the sale with Higgins, that the drugs belonged to him, that he received the proceeds of the sale and that he could not be present at the sale because he was unexpectedly detained out of town by weather on November 13, 1974. Higgins identified the defendant as the person

who delivered the drugs on November 13, 1974. At a bench trial, defendant was found guilty of the offense of delivering a controlled substance.

At the sentencing hearing, the State presented no evidence in aggravation, but recommended a sentence of 1½ to 4½ years in the penitentiary because the defendant associated with drug dealers and because of the large quantity of drugs at issue here. Defendant's father testified that defendant had never been in trouble before with the exception of a number of traffic offenses, that he was a hard worker and that he paid some of the household expenses while living at home. Defendant's brother testified that defendant was a hard worker who did not use drugs or alcohol. After taking note of the seriousness of defendant's offense, the court sentenced him to the penitentiary for a period of 1 1/3 to 4 years and denied his motion for bail pending appeal.

The charges against 22-year-old Dennis Kelly arose from an occurrence on December 18, 1974, at which the defendant delivered .08 grams of M.D.A. to M.E.G. agent Dennis Garrett who posed as the friend of one of defendant's friends, Steve Warsaw. For a week prior to the delivery, Warsaw had repeatedly requested that defendant sell him drugs. On each occasion, defendant told Warsaw that he had no drugs, but, in order to end the "pressure," defendant agreed to procure drugs for Warsaw and one of Warsaw's friends. This agreement was reached after another of defendant's friends, Rick Coless, told defendant that he could procure drugs from defendant's brother-in-law, Vaughn McDowell. On the evening of the transfer, Warsaw and Agent Garrett arrived at defendant's house where a number of people, including Coless were present. Coless withdrew some bags of M.D.A. from the freezer where they were in a larger bag containing United States currency and more M.D.A. Coless handed the large bag to defendant who in turn handed three small bags of M.D.A. to Agent Garrett and received $25 in return. The larger bag and the $25 was then returned to McDowell. Garrett asked defendant if he could supply more drugs and defendant said no. Garrett also asked about the quality of the M.D.A. and defendant responded that it was good stuff but that he had not tried it.

The defendant was tried before a jury and found guilty of delivery of less than 300 grams of a controlled substance. At the sentencing hearing, defendant testified that he had been employed as a carpenter and roofer up to the time of his conviction and that he had taken on part time work as well. He has one child and pays $30 per week in child support to his wife from whom he is separated and is seeking a divorce. The State made a recommendation of either probation and 6 months in the county jail or a term of 1 to 3 years. Defendant testified that the offense at issue was an isolated occurrence that never would have occurred but for the

inducement of Steve Warsaw. Defendant has had no prior criminal record; however, the court sentenced defendant to 1 to 3 years in the penitentiary and refused to grant bail during the pendency of this appeal.

■■ Our supreme court has concluded that reviewing courts do not have authority to reduce a sentence of imprisonment to probation. (*People v. Rege* (1976), 64 Ill. 2d 473, 356 N.E.2d 537; *People v. Bolyard* (1975), 61 Ill. 2d 583, 587-588, 338 N.E.2d 168; *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 555, 301 N.E.2d 300.) Furthermore, the scope of review from denial of an application for probation is limited to determining whether the trial court exercised its discretion in sentencing or whether that discretion was abused by some arbitrary action. *Bolyard; People v. Saiken* (1971), 49 Ill. 2d 504, 514-15, 275 N.E.2d 381.

■■ Judicial discretion permeates practically every facet of every stage in the criminal trial process. The trial judge's decisions are generally upheld on appeal except in the most flagrant cases of abuse, because the judge is in the best position to observe the witnesses and parties and to feel the subtle influences that cannot be discerned by merely reading the record. Yet, as one court has stated, "❋ ❋ ❋ he is not altogether a law unto himself, but may be overruled if his action is such as to shock the universal, or the common, sense of what is right among his fellows." (*Hubbard v. Hubbard* (1904), 77 Vt. 73, 77-78, 58 A. 969, 970.) Because of the merits of individualized justice, "[e]limination of all discretionary power is both impossible and undesirable. The sensible goal is development of a proper balance between rule and discretion." (K. Davis, Discretionary Justice 42 (1971).) Similarly, Mr. Justice Cardozo has stated:

> "The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.' Wide enough in all conscience is the field of discretion that remains." B. Cardozo, The Nature of the Judicial Process 141 (1921).

While it is within the discretionary power of a trial court to consider the nature and seriousness of an offense in denying probation (*People v. Vincson* (1973), 15 Ill. App. 3d 934, 939, 305 N.E.2d 671), the court must also comply with section 11 of article I of the 1970 Illinois Constitution which states:

> "All penalties shall be determined both according to the

seriousness of the offense and with the objective of restoring the offender to useful citizenship. * * *."

In proposing from the floor of the Convention that all penalties must be determined with the objective of restoring the offender to useful citizenship, Delegate Leonard N. Foster stated:

" * * * Traditionally the constitution has stated that a penalty should be proportionate to the nature of the offense. I feel that with all we've learned about penology that somewhere along the line we ought to indicate that in addition to looking to the act that the person committed, we also should look at the person who committed the act and determine to what extent he can be restored to useful citizenship.

I have also adopted in this amendment Mr. Whalen's suggestion that the judges should not be given the same arbitrary latitude that they have now in determining sentences, but rather that a judge should be expected to explain why he gave a maximum or minimum or whatever he gives in a given case and that it should be clear public policy that these decisions are reviewable. Currently the courts are extremely loathe to review sentences imposed by a trial judge, and I accept Mr. Whalen's suggestion that these should be explained and should be reviewed." (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1391.)

The constitutional provision creates a tension between the considerations that go into the granting or denial of probation. This tension is necessary to reach the goal of sentences crafted for the individual defendant insofar as they reflect the defendant's conduct and his rehabilitative potential.

The defendants herein have been convicted of violating section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401). Section 100 of that Act provides:

"It is not the intent of the General Assembly to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances. To this end, guidelines have been provided, along with a wide latitude in sentencing discretion, to enable the sentencing court to order penalties in each case which are appropriate for the purposes of this act." Ill. Rev. Stat. 1973, ch. 56½, par. 1100.

In furtherance of this objective, our legislature has provided in the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1100 *et seq.*) for a wide variety of penalties which can be imposed for specific offenses depending on their seriousness. For instance, the manufacture or delivery of 30 grams or more of a substance containing heroin may be penalized by any term of imprisonment exceeding 4 years and a fine of up

to $200,000 (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1; ch. 56½, par. 1401(a)(1)) although possession of the same amount of heroin may be penalized by the same term of imprisonment and a fine up to $100,000 (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)(1)). The manufacture or delivery of a controlled substance or of a lawful manufacturer's container for such substance may be subjected to lesser penalties depending on the type of substance or container involved. These offenses are classified from Class 2 felonies to Class A misdemeanors with fines ranging from $25,000 to $15,000. (Ill. Rev. Stat. 1973, ch. 56½, par. 1403.) Delivering or possessing a substance represented to be a controlled substance is a Class 3 felony carrying a fine of up to $15,000. (Ill. Rev. Stat. 1973, ch. 56½, par. 1404.) Some sales of controlled substances to persons under the age of 18 and offenses by recidivists may be penalized by up to twice the maximum term of imprisonment otherwise authorized. Ill. Rev. Stat. 1973, ch. 56½, pars. 1407, 1408.

Our careful review of the records in the instant cases discloses that the defendants are most likely occasional petty distributors who are at least candidates for probation. Defendant Hunt sold his brother's L.S.D. for $80 and left the sale's proceeds for his brother. He was a good worker, athlete and school leader who had no prior record. Defendant Honn sold 2.3 grams of another person's M.D.A. at the other's urging for no personal gain. He heavily involved himself in work for the underprivileged and disadvantaged. Defendant Vance transferred 2 ounces of M.D.A. for another person, but he realized no profit from the transaction. He was a hard-working 20-year-old, without a criminal record, who assisted his family and continued to live at home. Defendant Kelly transferred .08 grams of M.D.A. at the behest of a lifelong friend. He realized no profit from the transaction and had no prior record. He was employed at the time of sentencing and paid child support to his estranged wife.

The record does not disclose that these defendants are individuals whose imprisonment is necessary to protect the public, who are in need of the type of correctional treatment that is most effectively provided by imprisonment or whose probation would be inconsistent with the ends of justice. (Section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1).) Rather, the records reflect that the sentencing judge was overwhelmingly concerned with the severe societal problem caused by the use and transfer of drugs and not with the particular circumstances presented in these individual cases. The similarities between the sentences actually imposed and the language employed in imposing the sentences belies the judge's true motivation.

■■ While we share the concern of the sentencing judge, we hold that he improperly ignored the clear requirements of section 11 of article I of our Constitution, of section 5—6—1 of our Unified Code of Corrections,

and of section 100 of our Controlled Substances Act. His refusal to grant bail to the defendants during the pendency of their appeals, in addition to denying them probation, fuels our certain belief that he seriously abused his judicial discretion in these cases.

The defendants each appended to their briefs on appeal a list of 11 circuit court cases involving the sale or possession of controlled substances in which the same judge is alleged to have arbitrarily imposed prison sentences. Defendants also allege in their briefs that the judge only imposed a sentence of probation when the State's Attorney recommended such a sentence pursuant to a negotiated plea of guilty. The record in the pending case, however, reflects that neither the records in these unrelated cases nor evidence in support of the defendants' allegations were admitted at their trials. We also note that our own records reflect essentially the same data as is pointed out by the defendants, because many of those cases have been, or are in the process of being appealed to this court. The State, however, has filed motions to strike all references on appeal to those cases.

■■ Without addressing the statistical merits of the defendants' allegations that the judge arbitrarily denied probation to defendants convicted of selling or possessing controlled substances unless the State's Attorney recommended probation, we hold that the references to unrelated McLean County cases should be stricken because the records in those cases were not admitted into evidence and because we lack authority to judicially notice the contents of those records. The rule authorizing a court to take judicial notice in such cases provides:

> "The defendant admits that he is aware of the precedent that a court will not take judicial notice of the contents of records except in proceedings pending before it. He has also stated in his brief that he realizes that here he is not only asking this court of review to take judicial notice of a record in a case other than that pending before it, but of a record of the lower court.
>
> There is no precedent for this court to consider the proceedings in the lower court in the case of Mary Canady. In People v. Hunt, 357 Ill 39, 190 NE 809, the court stated at page 40: 'A Court will not take judicial notice of the contents of its records except in the proceeding pending before it.' " (*People v. Washington* (1966), 81 Ill. App. 2d, 90, 96, 225 N.E.2d 472, *aff'd*, 41 Ill. 2d 16, 241 N.E.2d 425.)

Another court has expressed this rule as follows:

> "Ordinarily, a court will take judicial notice of their records in a pending case but not in respect to records of other proceedings even where the facts are within their personal knowledge. (*In re Estate of Fornof*, 96 Ill. App. 2d 260, 264, 238 N.E.2d 240; *People v. Frank Washington*, 81 Ill. App. 2d 90, 96.) Such records would be

admissible, however, if a foundation is laid and they were otherwise properly offered into evidence." (*State Farm Mutual Automobile Insurance Co. v. Grebner* (1971), 132 Ill. App. 2d 234, 237, 269 N.E.2d 337.)

Accordingly, we grant the State's motion to strike the unsupported references to unrelated cases in which the trial judge is alleged to have acted in an arbitrary manner in denying probation.

■■ We are ordinarily hesitant to reverse a trial judge's exercise of discretion in sentencing criminal defendants (see *People v. Smith* (1976), 42 Ill. App. 3d 546, 356 N.E.2d 358), but we note that reviewing courts may under proper circumstances reverse a sentence and remand for resentencing by a judge other than the trial judge. Our supreme court granted such relief in *Bolyard* when it stated:

"In the present case the trial judge heard defendant's argument for granting probation and then expressed his opinion that perpetrators of such a crime should not receive probation. Under these circumstances we find, as the record affirmatively shows, that the trial judge arbitrarily denied probation because defendant fell within the trial judge's category of disfavored offenders. Accordingly, defendant is entitled to a new hearing to determine his sentence based upon the consideration of proper factors." (61 Ill. 2d 583, 587, 338 N.E.2d 168, 170.)

Since we find that the trial judge abused his discretion in imposing the sentences herein, we reverse those sentences and we remand for resentencing by a judge other than the judge who originally sentenced the defendants.

■■ Defendant Vance also argues that the trial court committed reversible error in refusing to grant his motion for a bill of particulars. The granting of such a motion is within the discretion of the trial court, and only the clear abuse of that discretion is reversible error. (*People v. Davis* (1966), 73 Ill. App. 2d 386, 391, 220 N.E.2d 75.) A bill of particulars is required only when the indictment, standing alone, is not specific enough to allow the defendant to prepare a defense or to prevent his being twice placed in jeopardy. (Section 111—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 111—6).) Our review of the record discloses that it presented sufficient information on which to prepare his defense, and that the court did allow defendant's motion to inspect physical evidence. We, therefore, find that the alleged confusion regarding the substance transferred was easily remedied even if present and that no bill of particulars was required.

Reversed in part and remanded with directions.

CRAVEN, P. J., and TRAPP, J., concur.