THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT PINCHOTT, Defendant-Appellant.

Fourth District   No. 13839

Opinion filed December 16, 1977.

TRAPP, J., dissenting.

Marvin Leavitt and Michael Pritzker, both of Pritzker & Glass, Ltd., of Chicago, for appellant.

Ronald Dozier, State's Attorney, of Bloomington (Robert C. Perry and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant was convicted in a bench trial of delivery of a controlled substance in violation of section 401 of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401) and sentenced from 1½ to 4½ years in prison. He timely appeals.

Defendant's trial began April 13, 1976. The prosecution elicited testimony from numerous witnesses to establish the chain of custody of the delivered substance. Testimony indicated that the white powder weighed one gram and contained cocaine, a controlled substance.

Dennis Garrett testified that on October 28, 1974, he met defendant on Steward Street in Normal, Illinois. Garrett supplied defendant with $50 with which to purchase one gram of cocaine. Defendant exited the vehicle in which he, Garrett, and Ford Conley were riding and returned five minutes later with a plastic bag containing a white powdery

substance which he handed to Garrett. Garrett asked defendant what the powder was, and defendant replied, "It's cocaine." Garrett identified defendant as the person who made the delivery.

The State rested. After a two-day continuance, defense counsel called no witnesses on behalf of the defendant. Following argument, the trial court found defendant guilty as charged.

■■ Pinchott first argues that he was not proved guilty beyond a reasonable doubt because Dennis Garrett's testimony was incomplete. However, the record clearly shows that Garrett testified to the delivery of the cocaine by the defendant. His lack of recall about extraneous facts of an event occurring more than a year before is a factor which the trial judge weighed in determining credibility and which we do not find to rise to a reasonable and well-founded doubt of guilt. *People v. Watkins* (1970), 46 Ill. 2d 273, 263 N.E.2d 115.

■■ Pinchott next contends that Garrett's use of an "admittedly" inaccurate report to refresh his recollection is error. However, defendant's arguments are misplaced since (1) any inaccuracy in the report went only to the number of people present and not to the facts about delivery, and (2) the doctrine of past recollection recorded does not apply when, as noted by the trial judge, Garrett testified from his own memory after refreshing his recollection from the document. (See *People v. Jenkins* (1973), 10 Ill. App. 3d 166, 294 N.E.2d 24.) The report used to refresh Garrett's independent recall does not become evidence itself, in contrast to the situation under the evidentiary theory of past recollection recorded.

■■ Pinchott attempts to weaken Garrett's testimony by asserting that the informer failed to testify. Defendant's position, however, is based on *People v. Strong* (1961), 21 Ill. 2d 320, 172 N.E.2d 765. In *Strong*, however, the defendant's testimony directly contradicted the State's testimony; the informer could have refuted defendant's testimony if it were false. (See also *People v. Reese* (1966), 34 Ill. 2d 77, 213 N.E.2d 526.) Here, defendant did not testify, so there was no direct contradiction on which the trial court could properly assume that the lack of testimony by the informer showed a weakness in the State's case. In addition, defendant's counsel interviewed the informer and could have called him if his testimony was, in fact, helpful to Pinchott. No reasonable doubt arises.

■■ Defendant argues that the State failed to prove a chain of custody with the cocaine. The State has the burden of showing sufficient continuity of possession from the time of sale to when the same is offered into evidence so as to negate the possibility of tampering or substitution. (*People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837.) Defendant argues that reasonable doubt exists since Dean Bacon's report indicated

he picked up the cocaine on February 12 instead of February 21, as shown on the evidence tag. Each witness identified his or her writing on the evidence tag. The discrepancy in the report was explained by Bacon as a typo ("12" instead of "21"); the explanation is buttressed by Bacon's reliance on the evidence tag date as correct and by the fact that the report shows elsewhere a typing date of February 21. The credibility of the witness was determined by the court and we find no error in the determination of a sufficient chain of custody.

Defendant contends that his right to a fair trial was violated since the State failed to disclose the participation of a confidential informant to the alleged transaction. A recitation of the facts unveils a deliberate failure to disclose. After MEG agent Dennis Garrett received the cocaine, he made out a report which was deliberately drafted as to not disclose the fact that there was a third party present at the transaction; a third party, however, was present. Ford Conley was, at the time of defendant's cocaine transaction, a "confidential informant" for MEG. At the time of the trial, he was a MEG agent no longer working undercover.

Defendant made the usual discovery requests as .per our Supreme Court Rules. Garrett's inaccurate report was forwarded by the State's Attorney to defendant. At trial, the State's last witness was Garrett. The State did not plan to call Conley. As soon as Garrett stated that agent Conley was present with defendant and himself at the time of the delivery, defense counsel objected and moved for a mistrial based on the fact that the report was deliberately drafted to delete the presence of "Ford J. Conley." Conley's first name had not been previously mentioned. The prosecutor admitted to the court that MEG deliberately did not put in their reports the existence of confidential informants; the procedure of concealment was of MEG's own design. The stated purpose was to protect the identity and the physical well-being of the informant and to extend his usefulness as an informant. The prosecutor continued that once the State's Attorney found out about this practice, it still took several months of persuasion before the MEG official responsible changed the policy. The prosecutor then reiterated he would not call Agent Conley. The court offered defendant a continuance and ordered the State to make Conley available for interviewing. Defendant's counsel refused the offered continuance, whereupon the court denied the mistrial motion and further examination of Garrett continued. The court, after the prosecution rested, granted defendant's request for a continuance in order to interview Conley. The interview was conducted. Defendant did not call Conley to testify either as his witness or a court's witness.

■■ The suppression of evidence favorable to the defendant, irrespective of good or bad faith on the State's part, upon defendant's

request is error. (*People v. Dixon* (1974), 19 Ill. App. 3d 683, 312 N.E.2d 390.) The practical result of this devious policy was to hide the fact that an informer was present. To deny defense access to an informer so that defendant can determine whether or not the informer could provide testimony helpful to the defense is to deny defendant his sixth amendment rights. (*People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685; see also *People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12.) Even though defendant should have known a third person was present, it was not possible from the report to determine that Conley was a MEG informer.

■■ Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412) adequately safeguards informants from the hazards of their profession. This court will not allow State officers or employees to put themselves above the rules of law, especially when their policies run aground of the constitutional rights of any and every citizen accused of criminal conduct. The MEG procedure of deliberate concealment in agent reports is reprehensible. Such a procedure violates the duty upon the State and all its criminal justice agencies to disclose the existence of informants, if any, present at the scene of the alleged crime. Procedures condoning deliberate distortions of properly discoverable evidence can result in retrials of convictions so gained, or outright dismissal of the case. (See dissenting opinion of Judge Smith in *People v. Crawford* (1969), 114 Ill. App. 2d 230, 252 N.E.2d 483.) To paraphrase Judge Smith in *Crawford*, whenever and wherever the State or its criminal justice agencies are guilty of misconduct, malfeasance or misfeasance in its discovery obligations, the sanctions of the trial court or this court should be swift, certain, and appropriate.

■■ However much we condemn the practices revealed in this case, we find that due to the appropriate actions immediately taken by the trial court, along with additional factors outlined below, reversal is not compelled. It is not the function of an appellate court to speculate what use defendant may put material evidence erroneously withheld from him. If this court cannot know the purposes to which defendant would put the undisclosed evidence, it cannot be said such error is harmless. (*Parton.*) The rule announced in *Parton* is distinguishable because the error here was revealed at, rather than after, trial. Conley's status was revealed before defendant's case began. (See *People v. Chaney* (1976), 63 Ill. 2d 216, 347 N.E.2d 138.) Defendant chose not to take the offered continuance but did interview Conley before his case began. We distinguish *People v. Elston* (1977), 46 Ill. App. 3d 103, 360 N.E.2d 518, because there was no series of disclosures that, despite the trial court's efforts, prejudiced defendant. Here, the one serious error was directly confronted by the

court and a remedy offered which we feel, on the basis of the facts and circumstances herein, rendered the error harmless. See *People v. Bradley* (1976), 43 Ill. App. 3d 463, 357 N.E.2d 696.

■■ Defendant finally argues that the trial court abused its discretion in arbitrarily denying probation. We agree. The facts of this case show that defendant was a "runner" in the transaction. The amount sold was small. Defendant had completed high school, two years at Rock Valley College, and was to have received his degree in psychology in late 1976 from Illinois State University in Normal. He planned to attend graduate school. The presentence report showed that defendant felt "dealing dope is stupid." A local drug abuse organization recommended defendant as a good candidate for probation based on defendant's attitude change resulting from his arrest and short incarceration, and that the supervision and reality orientation provided by the local probation officers could be effective and beneficial. Although the same report indicates defendant sold a different drug, marijuana, to close friends, he was not an aggressive solicitor and made no profit from the transactions.

In *People v. Honn* (1977), 47 Ill. App. 3d 378, 362 N.E.2d 90, the four defendants in the consolidated appeal contended that the same trial judge as in the case before us abused his discretion in arbitrarily denying probation. The facts of *Honn* showed that the defendants were petty distributors who were likely candidates for probation. The necessity of imprisoning the defendants to protect the public was not shown. The crimes committed by the defendants were within a disfavored category of the sentencing judge. Defendants were denied bail pending appeal by the trial court.

This court found that the trial court improperly ignored the clear requirements of section 11, article I, of the 1970 Illinois Constitution, section 100 of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1100), and sections 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1). We vacated each defendant's sentence and remanded for resentencing before another judge. The State sought leave to appeal *Honn* to our Supreme Court. On September 30, 1977, the Illinois Supreme Court denied leave to appeal in *Honn* (67 Ill. 2d ___).

In *People v. Wilson* (1977), 47 Ill. App. 3d 220, 361 N.E.2d 1155, this court vacated defendant's sentence and remanded for resentencing before another judge when it appeared from the trial court's comments that he would not grant first-time drug offenders probation. The defendant, Sue Wilson, was convicted of delivery of 1/10 of 1 gram of MDA. The State sought leave to appeal in *Wilson*; our Supreme Court denied the petition on September 30, 1977 (67 Ill. 2d ___).

This court filed a Rule 23 order in *People v. Brooks* (4th Dist. 1977), 46

Ill. App. 3d 1071, vacating a sentence and remanding for resentencing before another judge based on *Honn* and *Wilson*. The State's petition for leave to appeal was also denied on September 30, 1977 (67 Ill. 2d ___).

The facts herein show that Pinchott was a petty distributor who is a likely candidate for probation. The necessity of imprisoning Pinchott to protect the public is not shown by the record. Pinchott had no prior convictions. The crime committed was within a disfavored category of the sentencing judge. The sentence imposed is similar to those received by the *Honn* defendants. The trial court denied Pinchott's motion for bail pending appeal. This court allowed defendant's bail motion. Therefore, we hold that under *Honn, Wilson,* and *Brooks* that this sentence should be vacated and the cause remanded for resentencing before another judge.

Defendant's conviction is affirmed; his sentence is vacated and this cause is remanded for resentencing before another trial judge.

Affirmed and remanded with directions.

REARDON, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:
Defendant was sentenced upon conviction of delivery of one gram of cocaine.

The record does not show any application for probation and no oral request at the time of sentence by either counsel or the defendant in allocution. There is no testimony in mitigation or upon the question of probation. Defendant did offer into evidence a report of a drug treatment center which suggested probation. Such report also disclosed that defendant had been selling marijuana during the preceding two years and had, on at least one occasion, sold amphetamines. This transaction was a progression from a lesser to a greater offense. One does not deliver a gram of cocaine on the spur of the moment and without some conscious preparation.

Section 206(b)(4) of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1206(b)(4)) places cocaine upon Schedule II of controlled substances. Section 401(b) of that Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(b)) provides that the delivery of any amount of cocaine less than 30 grams shall be a Class 2 felony with a possible fine of $25,000.

Section 411 of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1411) provides that in determining the appropriate sentence for any conviction under the Act, the sentencing court may consider the unlawful delivery "of the most highly toxic controlled substances, as reflected by their inclusion in Schedule I or II of this Act" as indicative of the type of offenses which the legislature deems most damaging to the

peace and welfare of the citizens of Illinois, and which warrants the most severe penalty.

This case is obviously distinguishable from *People v. Honn* (1977), 47 Ill. App. 3d 378, 362 N.E.2d 90, where the several defendants were simply present without expectation of participation in the transaction, and actually served as a conduit in handing over the substance to the purchaser upon the request of another.

Here, the trial court's colloquy at sentence was directed to the seriousness of the offense. We cannot find in the record that the trial court imposed "an additional standard or requirement for probation" as in *People v. Bellson* (1973), 14 Ill. App. 3d 1089, 303 N.E.2d 30. The record does not affirmatively show that "the trial judge superimposed his personal belief in the severity of the crime charged and was predisposed to disregard arguments for probation" as in *People v. Bolyard* (1975), 61 Ill. 2d 583, 586, 338 N.E.2d 168, 169.

In *People v. Wilson* (1977), 47 Ill. App. 3d 220, 222, 361 N.E.2d 1155, the opinion noted that the trial court's colloquy:

> "* * * discloses a view or policy which would make it virtually certain that no offender would be granted probation for the violation of the statute at issue, and would to a substantial extent, thwart the legislative purpose of providing a wide range of sentence possibilities. Within the rule of *Bolyard*, it may be said that the denial of probation was an arbitrary exercise of judicial discretion in this case."

This record does not disclose any matter of such quality to support a conclusion that a failure to grant probation was an arbitrary abuse of discretion.

In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the court reiterated that in the absence of an abuse of discretion the reviewing court may not alter the sentence. As to defendant's argument there, that an abuse of discretion need not be found in the record, the court said:

> "to whatever extent the appellate [court] opinion implicitly holds that an abuse of sentencing discretion need not be shown in order for a reviewing court to alter a sentence, that opinion is erroneous." 68 Ill. 2d 149, 154.

Examination of this record discloses no matter reflecting an abuse of discretion. The judgment should be affirmed.